268 So.2d 544 (1972)
Prince Albert JOHNSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 72-89.
District Court of Appeal of Florida, Third District.
November 7, 1972.
Rehearing Denied December 5, 1972.
*545 Gross & Krause, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and J. Robert Olian, Asst. Atty. Gen., for appellee.
Before BARKDULL, C.J., and CHARLES CARROLL and HAVERFIELD, JJ.
PER CURIAM.
The appellant was a juvenile at the time he was indicted for murder in the first degree on November 2, 1971.[1] He was tried before a jury in the circuit court of Dade County. A verdict of guilty was rendered, with recommendation of mercy. Following adjudication of guilt of the crime and imposition of a life sentence, the defendant filed this appeal.
The facts relating to the homicide, in short summary, were as follows: The victim's husband Emondo Roman was an ice cream vendor, doing business on the streets from a motor truck. His wife accompanied and assisted him. On July 25, 1971, while so engaged, Roman stopped his vehicle on a certain street in Miami, in front of an apartment house, into which he entered and stayed for a few minutes. His wife remained seated in the parked truck. Located behind a refrigerator within the truck there was a small lock-box containing $28 and some personal papers belonging to Roman. In order for a person to get to the box it was necessary to enter through a front door of the truck and proceed to the rear between the passenger seats. During the short period that Roman was absent, someone entered the truck, shot and killed Mrs. Roman, and removed the money box.
At the trial, each of two six year old girls testified she heard a gunshot and shortly thereafter saw two boys running away from the truck, and that one of them was carrying such a box. The box was *546 found by the police, behind a church about a block away. The box and papers were identified by Roman as his. Fingerprints on the box matched those of the defendant. The arrest of the defendant was made a day after that upon which the homicide occurred.
The defendant was taken to the juvenile and domestic relations court of Dade County, where a pre-detention hearing was held, at which his mother and officers Griffin and Anderson were present. An assistant public defender who had been assigned to that court was "called in" for the hearing, and appointed by the court to represent the defendant. The court ordered that the defendant be held in the county jail. After that hearing the assistant public defender did not talk with the defendant or see him again until the occasion of another hearing in the juvenile court in September. The nature of that later hearing is not shown. Sometime after the first hearing in the juvenile court and prior to the September hearing, private counsel was employed for the defendant.
Upon conclusion of the July 26 pre-detention hearing in the juvenile court, the defendant was incarcerated in the Dade County jail. The next day he was interrogated by officers Griffin and Anderson at approximately 10:00 A.M. and again in the afternoon when a statement given by the defendant was put into writing, and was signed by him. On both occasions the defendant was advised of his Miranda rights, and, according to the testimony of the officers at the subsequent hearing on motion to suppress, the defendant voluntarily submitted to interrogation and waived the right to have counsel present.
On this appeal the first contention made by the appellant is that because counsel was appointed for him at the pre-detention hearing in the juvenile court, and the interrogating officers had knowledge thereof, no interrogation of him was legally permissible unless his attorney was present, and that no consent to be interrogated or waiver of counsel at such interrogation could be valid or legally effective unless made in the presence of counsel.
We hold that contention is without merit. Where a defendant has employed counsel, or one has been appointed for him, the presence of his counsel is not essential to the validity or effectiveness of a waiver by the defendant of the right to have counsel present at some critical stage of the proceedings. United States v. Crisp, 7 Cir.1971, 435 F.2d 354, 358, 359; Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 726.
The situation presented in this case is materially different from that in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. There, after an indictment, and out of the presence of the defendant's counsel, a statement was obtained from the defendant surreptitiously, without a knowing consent of the defendant to interrogation or waiver of right to have counsel present. An attempt to interpret Massiah to stand for the proposition that no valid interrogation of a defendant (whether surreptitious or otherwise) can take place out of the presence of his attorney where he has one, must be rejected in view of the subsequent Miranda decision wherein the Court expressly recognized the validity of a knowing and voluntary waiver of rights when made during the "critical stage" of custodial interrogation.
In the instant case there was competent substantial evidence of lack of knowledge or understanding on the part of the interrogating officers that the defendant had counsel at the time of the interrogation, at which presence of counsel was waived by the defendant.[2]
*547 Although at the hearing on motion to suppress the evidence bearing on the waiver of counsel's presence was in conflict, the record thereof supports the conclusion of the trial court necessarily reached in denying the motion to suppress, that the voluntariness of the defendant's statement and the waiver by the defendant of a right to have counsel present at the interrogation were established by a preponderance of the evidence. Accordingly, we hold no error was committed by the trial court in denying the defendant's motion to suppress.
Appellant next contends the court erred by refusing to qualify the two young girl witnesses out of the presence of the jury. As to whether such witnesses should be qualified out of the presence of the jury, we make no comment. However, the record discloses no such request was made on behalf of the defendant. The objection or request made by counsel for the defendant was that the witnesses be qualified before testifying, which the court proceeded to do, to its satisfaction.
The appellant further contends the court committed error by refusing to re-read the charge on the degrees of homicide, when the jury, after having retired, so requested. The record discloses that following the request there was discussion of the matter between the court and counsel, and that the trial judge, being undecided as to whether to re-read a portion of the charges as requested or to re-read the charges in their entirety, informed the jury he might re-read some of the charges to them without reading all, or that they might have to rely on their recollection of the charges given, and directed the jury to retire while further conference on the matter was held between the court and counsel. The record then contains the following statement by the court: "I want the record to reflect that the court was arranging its charges and in preparation to instructing them possibly on all of the charges and due to the fact that when we sent them out five or ten minutes or whatever it was they have already reached a verdict." Thus, the jury chose to return a verdict without waiting to be further charged. We find no reversible error resulted from those proceedings.
Appellant makes the additional contention that the panel from which the trial jurors were chosen was unconstitutionally constituted by reason of systematic exclusion of black persons therefrom. We reject that contention on the basis of the proposition submitted by the state that any irregularity in drawing, summoning and impaneling of the jurors was waived by the defendant by going to trial without any timely objection with regard thereto. See Rule 3.300 CrPR, 33 F.S.A., State v. Silva, Fla. 1972, 259 So.2d 153, 158.
No reversible error having been demonstrated, the judgment is affirmed.
NOTES
[1] Section 39.02(6)(c) Fla. Stat., F.S.A., provides that when a child of any age is indicted by a grand jury for an offense punishable by death or by life imprisonment, "the juvenile court shall be without jurisdiction, and the charge shall be made, and the child shall be handled, in every respect as if he were an adult."
[2] At the hearing on the motion to suppress officer Griffin testified he knew counsel had been appointed for the defendant at the juvenile court hearing, but he had not understood that such appointment was to be for more than representation of the defendant at the hearing. Regarding that uncertainty, officer Griffin, referring to the hearing in the juvenile court, testified:

"Like I say, the judge asked her, his mother, if she wanted the public defender and she said `No, I'll get my own attorney,' and I didn't listen any further."
Officer Anderson testified that he did not know the defendant had counsel, and stated that at the hearing before the juvenile court, at which he was present, he heard some discussion which indicated "they couldn't decide whether they wanted a public defender" and that he did not recall anything further at the hearing with relation to counsel for the defendant.
With reference to the waiver of counsel by the defendant at the time of interrogation, according to testimony of the officers, the defendant, after being advised of his right to have counsel present, consented to proceed without counsel, and stated he did not want counsel.