823 So.2d 834 (2002)
Mario O'QUENDO, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3491.
District Court of Appeal of Florida, Fifth District.
August 16, 2002.
*835 James B. Gibson, Public Defender, and Lyle Hitchens, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Mario O'Quendo ["O'Quendo"] appeals his convictions for aggravated fleeing and eluding at high speed, resisting arrest without violence, and driving without a license. He claims the verdict convicting him was tainted by the action of the judge presiding over jury selection in excusing, over his objection, a public defender who had been called to jury duty.[1]
At trial, defense counsel contended that because the judge who handled the jury selection was not the trial judge, he was not the "presiding judge" entitled to take such action. The prosecutor responded that a different record would have to be made to preserve the issue. He also argued that the dismissal of the attorney from the public defender's office did not fundamentally taint the venire. Finally, he argued that the wrongful dismissal of the public defender was, at most, harmless error since he had a number of strikes left over and would have exercised a challenge for cause or a peremptory challenge to strike her. The court denied the motion to strike the panel, finding it was too speculative to assume that the public defender's dismissal had any effect on O'Quendo's trial. The court stated:
I don't see how your client or his rights have been affected. There is too much speculation as to what would have happened had she been assigned to this courtroom, other than to know and believe that if she were here, and there was a motion for cause, I probably would have granted it.
Had I not granted it, she would have been struck by the State, which it has every ability to do.
I'm concerned about the Court's authority, but I don't know that it affected anything.
I'm inclined at this point, unless you can convince me of some injury, or some hurt, or some violation, other than why *836 it's a violation of a fair trialI'm inclined to deny your motion.
O'Quendo argues on appeal that the judge who excused the public defender had no authority to excuse her because he was not the judge assigned to his case, and therefore failed to qualify as a "presiding judge" within the meaning of section 40.013(5), Florida Statutes (2000):
A presiding judge may, in his or her discretion, excuse a practicing attorney, a practicing physician, or a person who is physically infirm from jury service
. . . .
Id. (emphasis supplied). O'Quendo maintains that his jury panel or venire was not drawn according to law. See Fla. R.Crim. P. 3.290.
The initial success of O'Quendo's argument depends on the meaning of the term, "presiding judge," as used in section 40.013(5), Florida Statutes. O'Quendo seeks to limit its use to the judge who was to preside over his trial. However, because a judge conducting the general qualification of the jury directs or controls that proceeding, he qualifies as a "presiding judge" within the meaning of section 40.013(5), Florida Statutes. During the general qualification process:
the court determines whether prospective jurors meet the statutory qualification standards or whether they will not qualify because of physical disabilities, positions they hold, or other personal reasons. The general qualification process is often conducted by one judge, who will qualify a panel for use by two, three, or more judges in multiple trials. Counsel or a defendant does not ordinarily participate in this type of qualification process, although neither is excluded from doing so. In many instances, counsel and the defendant are not present because this preliminary qualification process occurs days prior to the trial.
Remeta v. State, 522 So.2d 825, 828 (Fla. 1988). We find there is no merit to O'Quendo's claim that the jury panel or venire was not drawn according to law.
Finally, even if the challenge to the panel had been timely,[2] any error was harmless. As the court explained in Piccott v. State, 116 So.2d 626 (Fla.1959):
Seldom, if ever, will excusal of a juror constitute reversible error for the parties are not entitled to have any particular jurors serve. They are entitled only to have qualified jurors.
Id. at 627. No argument is made here that the jurors who served were not qualified.
Nor does the fact that a public defender was excluded from the panel mean that the venire contravenes the constitutional requirement that the jury array reflect a cross-section of the community from which no cognizable group of citizens has been systematically excluded. See generally Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); Gordon v. State, 704 So.2d 107 (Fla.1997).[3] It has long been recognized *837 that exempting lawyers from jury service does not result in a jury that is not representative of the community. Williams v. State, 285 So.2d 13 (Fla.1973). Although the public defender appears to have been improperly excluded from the jury against her will, this is not a basis for reversal of the jury's verdict.
AFFIRMED.
COBB and PALMER, JJ., concur.
NOTES
[1] O'Quendo's remaining issue on appeal has no merit and will not be addressed.
[2] A challenge to the panel must be made and decided before any individual juror is examined, unless otherwise ordered by the court. Fla. R.Crim. P. 3.290. See State v. Silva, 259 So.2d 153, 158 (Fla.1972); State v. Bethel, 268 So.2d 557 (Fla. 3d DCA 1972); Johnson v. State, 268 So.2d 544 (Fla. 3d DCA 1972); see also Shotwell Mfg. v. United States, 371 U.S. 341, 362, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Frazier v. United States, 335 U.S. 497, 514, 69 S.Ct. 201, 93 L.Ed. 187 (1948).
[3] "In order to establish a prima facie violation of the faircross-section requirement, the defendant must show (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).