857 So.2d 861 (2003)
Joel Dale WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
Joel Dale Wright, Petitioner,
v.
James V. Crosby, Jr., etc., et al., Respondents.
Nos. SC00-1389, SC01-2866.
Supreme Court of Florida.
July 3, 2003.
Rehearing Denied October 10, 2003.
*864 Martin J. McClain, Special Assistant CCRC-South, Brooklyn, NY, and Neal Andre Dupree, CCRC-South, Office of the Capital Collateral Regional Counsel for the Southern Region, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Judy Taylor Rush and Douglas T. Squire, Assistant Attorneys General, Daytona Beach, FL, for Appellee/Respondent.
*865 PER CURIAM.
Joel Dale Wright (Wright) appeals an order entered by the trial court denying his second motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9) Fla. Const. For the reasons discussed below, we affirm the trial court's denial of postconviction relief, and we deny Wright's petition for a writ of habeas corpus.

FACTUAL AND PROCEDURAL HISTORY
The facts at trial have been thoroughly presented by Justice Blackmun in his dissent from the United States Supreme Court's denial of certiorari. The facts are:
On February 6, 1983, a woman was found murdered in the bedroom of her home. She apparently had died the previous night after being raped and stabbed. All the doors to her home were locked, but a back window was found open. Several weeks later, Charles Westberry told his wife that petitioner Joel Wright had come to Westberry's trailer shortly after daylight on the morning of February 6 and had confessed to killing the victim. Wright lived with his parents near the victim's home. Westberry's wife notified the police, and Wright was arrested and tried for the crime. At trial, Westberry was the State's principal witness. He testified that Wright had told him on the morning of February 6 that Wright had entered the victim's house through the back window to steal money, that the victim had discovered him as he was wiping his fingerprints from her purse, and that he had killed her because he did not want to return to prison. According to Westberry, Wright counted out $290 he claimed to have taken from the victim's home, and he asked Westberry to tell the authorities that Wright had spent the previous night at Westberry's trailer. Another witness [Paul House] for the State testified that, approximately one month before the murder, he and Wright had stolen money from the victim's home after entering through the window later found open on February 6. The jury also was told that a fingerprint identified as Wright's had been found on a portable stove in the victim's bedroom.
Wright took the stand and denied involvement in the murder. He testified that he had returned home from a party at approximately 1 a.m. on February 6, but had found himself locked out. He claimed that he then had walked along Highway 19 to Westberry's trailer, where he had spent the night. He also presented a witness who testified that, late on the night of February 5 and early in the morning of February 6, he had seen a group of three men, whom he had not recognized, in the general vicinity of the victim's home.
After the close of evidence but prior to final arguments, the defense moved to re-open the case in order to introduce the testimony of a newly discovered witness, Kathy Waters. Waters apparently had read newspaper accounts of the trial, had listened to parts of the testimony, and had discussed the trial with friends in attendance. She offered to testify that, shortly after midnight on February 6, she had seen a person who could have been Wright walking along Highway 19, and had also observed three persons she did not recognize near the victim's home. Waters claimed that she had not realized she possessed relevant information until the morning her testimony was proffered, and that she had come forward of her own volition. The trial judge denied Wright's motion, *866 noting that Florida's sequestration rule would be rendered "meaningless" if, after discussing the case with others, a witness were permitted "to testify in support of one side or the other, almost as if that testimony were tailor-made." [Wright v. State,] 473 So.2d 1277, 1279 ( [Fla.] 1985). Although the State acknowledged that the violation of the sequestration rule had been inadvertent, it argued that the prosecution "could very well be substantially prejudiced" if Waters were permitted to testify. Id., at 1280. Wright was convicted and sentenced to die.
On appeal, the Supreme Court of Florida held that the trial judge's rigid application of the State's sequestration rule was inconsistent with Wright's Sixth Amendment right to present witnesses in his behalf. The court affirmed the conviction, however, because it deemed the error harmless.
Wright v. Florida, 474 U.S. 1094, 1094-95, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986) (Blackmun, J., joined by Brennan, J., and Marshall, J., dissenting). Procedurally, the case progressed as follows:
Joel Dale Wright was charged with killing a seventy-five-year-old Palatka school teacher. On September 1, 1983, he was convicted of first-degree murder, sexual battery, burglary of a dwelling, and grand theft. The jury returned an advisory sentence of death and the trial court, in accordance with that recommendation, imposed the death sentence. This Court affirmed the convictions and the sentence of death in Wright v. State, 473 So.2d 1277 (Fla.1985), cert. denied, 474 U.S. 1094, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986).
Wright v. State, 581 So.2d 882, 882 (Fla. 1991). In February 1988 Wright filed his first motion for postconviction relief, and the trial court granted an evidentiary hearing. The trial court issued a detailed order denying relief. After the trial court denied relief, but while the case was still pending on a motion for rehearing, Wright filed a supplement to his 3.850 motion alleging that his public defender's status as a special deputy sheriff created a conflict of interest. The trial court considered the substance of Wright's supplemental claim, finding the claim identical to a claim made by a different defendant in the Seventh Judicial Circuit, which had been denied. The trial court ordered Wright to furnish any evidence that had not been considered in the Seventh Circuit case. When Wright failed to respond, the trial judge adopted the Seventh Circuit court's findings and entered an order denying relief.
Wright appealed. We affirmed the trial court's denial of relief on most of the claims, but remanded the case for an evidentiary hearing on the claim of conflict of interest due to his public defender's service as a special deputy. See Wright, 581 So.2d at 886 (citing Herring v. State, 580 So.2d 135 (Fla.1991)). We explained:
While it may seem to be a total duplication of effort, it is clear that the trial judge in this case cannot adopt the factual findings of a trial judge in a different case involving a different defendant, even though those findings concern the same issue.
Wright, 581 So.2d at 886. We granted Wright permission to consolidate his claim with the claims of other defendants who also argued that Assistant Public Defender Howard Pearl's status as a special deputy sheriff affected his ability to provide effective legal assistance. These claims were dubbed the "Pearl" claim, and heard in December 1992 by Judge B.J. Driver.
Prior to the December 1992 hearing, Wright again amended his postconviction motion based on documents provided by the Putnam County Sheriff's Department *867 after a public records request under chapter 119, Florida Statutes. Judge Driver severed Wright's new claims from the Pearl claim because Judge Driver was appointed to hear only the Pearl claim, and these new claims were outside the scope of his appointment. Judge Driver denied relief on the Pearl claim, finding that Assistant Public Defender Howard Pearl's status as a special deputy sheriff did not affect his ability to provide effective legal assistance. During the postconviction hearing on the Pearl claim, Judge Robert Perry, who presided over Wright's trial, testified. Wright alleges he learned that Judge Perry also had special deputy appointments in Duval, Volusia, and Orange Counties, but Judge Perry testified that he did not recall whether he had a special deputy appointment in Putnam County, where Wright was tried.
After Judge Driver denied relief on the Pearl claim, Wright sought a hearing on the claims raised in the supplemental 3.850 motions which had been severed from the Pearl claim. The case was reassigned and an evidentiary hearing was held in March 1997, which was continued and completed in December 1997. In addition to the issues heard, the trial court reconsidered Wright's Pearl claim based on this Court's decision in Teffeteller v. Dugger, 676 So.2d 369 (Fla.1996), which held that the December 1992 consolidated hearing violated due process. Wright now appeals the trial court's order denying relief on his second postconviction motion.

MOTION FOR POSTCONVICTION RELIEF
Wright's theory at trial was that someone else committed the murder. In both his first and second postconviction motions, Wright asserted that the police failed to adequately investigate other leads which would have shown that someone else committed the murder. In this appeal of his second postconviction motion, Wright argues that (1) in the first postconviction proceeding in 1988, the trial court made false findings of certain facts and this Court erroneously adopted those false facts on appeal, the State failed to disclose exculpatory evidence as required under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and there was newly discovered evidence of innocence admissible under Jones v. State, 591 So.2d 911 (Fla.1991); (2) Wright's appointed trial counsel, Howard Pearl, and Pearl's investigator, Freddie Williams, were bonded deputy sheriffs, a status which interfered with their ability to provide effective assistance of counsel; (3) the trial judge, Robert Perry, failed to reveal at the time of trial and at the time he presided over Wright's first postconviction proceeding that he was a special deputy sheriff, which would have warranted disqualification; (4) Judge Perry's standard practice was to request the State to draft sentencing orders in capital cases which constitutes reversible error; and (5) Judge A.W. Nichols, III, who presided over Wright's second postconviction proceeding, refused to timely rule on his motion for postconviction relief, the State delayed disclosure of exculpatory materials, and both acts amount to a denial of due process. We discuss each claim below.

Claim 1

Reconsideration of Prior Brady Claim; Brady Claim; Newly Discovered Evidence
Wright's first claim in this appeal involves three separate issues: First, Wright argues that the trial court erred in denying his Brady claim in the first postconviction proceeding. Second, he argues that there exists new Brady material which entitles him to relief. Third, he argues that there is newly discovered evidence in *868 support of his innocence. Wright also argues that this Court should consider the cumulative prejudicial effect of the Brady material from his first postconviction proceeding, the Brady material he presents here, and the newly discovered evidence.[1] We will separately address each of the issues Wright raises under this first claim.

Issue 1. Reconsideration of Wright's First Brady Claim.
Wright alleges that in his first postconviction proceeding the trial court erred in denying his Brady claim because the trial court made factual findings not in the record. He further argues that this Court erroneously affirmed that denial of postconviction relief on appeal. Wright seeks a reconsideration under Brady of three written statements made to police during the investigation of the murder. The statements were made by Wanda Brown, Kimberly Holt, and Charlene Luce. In his first postconviction hearing, Wright argued that defense counsel should have been given copies of the written statements. The trial court in that proceeding denied Wright's Brady claim, finding that defense counsel knew of the Brown and Luce statements and had actually interviewed Holt during counsel's own investigation. We affirmed that finding on appeal. See Wright v. State, 581 So.2d 882 (Fla.1991). Now, in his second postconviction motion, Wright argues that the first postconviction trial court, and this Court thereafter, misconstrued the facts in the record so that the Brady claim was erroneously denied.
However, Wright has failed to meet his burden to show the grounds for relief he alleges here were not known and could not have been known at the time of the earlier proceeding. See Foster v. State, 614 So.2d 455 (Fla.1992). His argument that the first postconviction trial court misinterpreted the facts in the record was raised and addressed in his appeal following that proceeding, and in a motion for rehearing as well. Absent a showing that Wright did not know, or could not have known, of the alleged misconstrued facts during the first postconviction proceeding, the trial court in this proceeding properly denied relief. We will not entertain a second appeal of claims that were raised, or should have been raised, in a prior postconviction proceeding. See Downs v. State, 740 So.2d 506, 518 n. 10 (Fla.1999) (stating that claim raised in earlier postconviction motion is barred in subsequent postconviction motion even if based on different facts); Atkins v. State, 663 So.2d 624, 626 (Fla.1995) (explaining that issues that were or could have been presented in a postconviction motion cannot be relitigated in a subsequent postconviction motion).
Wright also argues that the trial court erred in the first postconviction proceeding by accepting the fact that two potential suspects, Henry Jackson (Jackson) and Clayton Strickland (Strickland) were eliminated from police investigation after they were given polygraph examinations which they purportedly passed. In this second postconviction motion, Wright *869 contends that the evidence the trial court relied upon in making its factual finding in the first postconviction proceeding, i.e., that Jackson and Strickland passed polygraph examinations, did not actually exist, a fact which Wright only realized when the State did not produce the polygraph examination results upon his public records requests made after the first postconviction motion. In order to avoid a procedural bar on this claim, Wright must allege new or different grounds for relief that were not known and could not have been known at the time of his earlier postconviction motion. See Christopher v. State, 489 So.2d 22, 24 (Fla.1986). Polygraph examination results for Jackson and Strickland were available for discovery at the time of trial and at the time of Wright's first postconviction proceeding.
Wright admits that he sought production of the polygraph results for the first time in 1997. At that time, Wright deposed Officer Derry Wayne Dedmon, who would have conducted the polygraph examinations in question. Officer Dedmon stated that in 1989 or 1990 he destroyed all of his polygraph records through 1984 by directive of the sheriff. The murder, police investigation, and trial in this case all occurred in 1983. Any polygraph examinations administered to suspects during the investigation of this case would have occurred in 1983 prior to Wright's trial, and the results would still have been available in 1988 when Wright brought his first postconviction motion. Thus, Wright has failed to demonstrate why he did not raise the absence of polygraph examination results from the record in his first postconviction proceeding and has failed to demonstrate that the absence of these documents was not known and could not have been known to him at the time of the earlier proceeding. See Foster.
Wright's claim that this Court should now reconsider certain factual issues that had been previously raised and resolved in the the first postconviction proceeding is not well taken. His arguments here are successive since they have been previously litigated on their merits, and he has failed to show why these additional facts could not have been known at the time of the first postconviction proceedings. See Downs; Atkins; Foster.

Issue 2. Brady Claim
After his first postconviction proceeding in 1988, Wright made public records requests from which he received numerous documents. The first set of documents produced in 1991 included police investigation reports regarding criminal activity in the neighborhood of the murder. Wright asserts that these reports demonstrate that the police did not adequately investigate other potential suspects, including Henry Jackson. A second set of documents was produced in 1996 and 1997. These documents, Wright argues, demonstrate failures and inadequacies of the police investigation and demonstrate that the investigating officer was dishonest. Wright also draws an inference from the lack of documents which, he argues, would exist if the police adequately considered other suspects. The documents Wright lists in his claim include Jackson's criminal history, neighbors' complaints to police about Jackson, and police reports involving other known criminals in the neighborhood which involve events completely unrelated to those in this case. All of this information, he alleges, is Brady evidence and entitles him to a new trial.
The United States Supreme Court announced in Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the three elements that a defendant must establish in order to successfully *870 assert a Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Accord Occhicone v. State, 768 So.2d 1037, 1041 (Fla. 2000). The burden is on the defendant to demonstrate that the evidence he claims as Brady material satisfies each of these elements. Even where favorable evidence is suppressed, a new trial will not be necessary where it is determined that the favorable evidence did not result in prejudice. See Cardona v. State, 826 So.2d 968 (Fla. 2002). The Court in Strickler explained that prejudice is measured by determining "whether `the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Strickler, 527 U.S. at 290, 119 S.Ct. 1936 (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).
As noted above, the evidence Wright claims as Brady material consists of information contained in police files concerning other possible suspects and other criminal activity in the same neighborhood. This is the same type of evidence that this Court recently addressed in Carroll v. State, 815 So.2d 601 (Fla.2002). In Carroll, the defendant argued that the State withheld favorable evidence that consisted of police investigative notes that linked the defendant with another suspect, that another person was believed by the family to be involved, and that other crimes, including another rape, had occurred in the neighborhood. In denying relief on this issue, we said, "As noted by the State, the prosecution is not required to provide the defendant all information regarding its investigatory work on a particular case regardless of its relevancy or materiality." Id. at 620. Likewise, investigators in this case were not required to provide all of the notes and information regarding their investigation. Thus, Wright has failed to demonstrate that the evidence should have been disclosed.
However, even if the State should have disclosed the evidence, Wright has not demonstrated prejudice by the failure to do so. In order to be entitled to relief on a Brady claim, the defendant must also show that the evidence "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Gorham v. State, 521 So.2d 1067, 1069 (Fla.1988). There has been no such showing in the instant case. The mere possibility that undisclosed items of information may have been helpful to the defense in its own investigation does not establish constitutional materiality. See United States v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Gorham v. State, 521 So.2d 1067, 1069. The fact of other criminal activities and the existence of other criminals in the same neighborhood where this murder occurred does not affect the guilt or punishment of this defendant.
We agree with the trial court's determination that the exculpatory effect of the documents is merely speculative; therefore, we affirm the trial court's denial of relief on this issue.

Issue 3. Newly Discovered Evidence
Wright claims that evidence produced as the result of the public records requests made after the first postconviction motion constitutes newly discovered evidence of innocence and requires a new trial. In order to qualify as newly discovered evidence, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the *871 use of diligence." Jones v. State, 591 So.2d 911, 916 (Fla.1991) (quoting Hallman v. State, 371 So.2d 482, 485 (Fla. 1979)). If this test is met, the court must next consider whether the newly discovered evidence is of such a nature as to probably produce an acquittal on retrial. Id. at 915. Additionally, we have said that newly discovered evidence, by its very nature, is evidence that existed but was unknown at the time of the prior proceedings. See Porter v. State, 653 So.2d 374, 380 (Fla.1995).
In this case, none of the evidence Wright claims as newly discovered since the first postconviction proceeding existed at the time of trial. For example, Wright presents a memorandum from 1986 criticizing the veracity of Officer Perkins, the investigator in this case. He presents a police report filed by an elderly resident of the neighborhood where the murder occurred that implies Henry Jackson hit the resident on her head and stole her money. He also presents police reports involving a witness against Wright who was a suspect in a different homicide. None of these documents existed at the time of Wright's trial in 1983, so they are not "newly discovered" evidence.
The trial court did not err in denying relief on this newly discovered evidence claim.

Issue 4. Cumulative Effect of Evidence
Finally, Wright argues we must consider, in determining whether he is entitled to a new trial, the cumulative effect of the evidence presented at trial, along with any Brady evidence, newly discovered evidence, and evidence that would have been presented at trial but for ineffective assistance of counsel. See State v. Gunsby, 670 So.2d 920, 921 (Fla.1996). We have considered and addressed Wright's Brady claim and claim of newly discovered evidence, and found them to be without merit. As discussed above, Wright may not relitigate the merits of his first postconviction claims. Having found that each claim presented in this proceeding lacks merit, we find no cumulative error. See Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999) (finding that claim of cumulative error was without merit where the court considered each individual claim and found them to be without merit).

Claim 2

Counsel's Alleged Conflict of Interest
Wright argues that a conflict of interest existed because his defense counsel, Howard Pearl, held the status of a special deputy sheriff while defending Wright. Wright contends that he was denied effective representation. The trial court addressed this claim, finding that Pearl's status as a special deputy did not in any way affect his vigorous defense and posed no conflict of interest. On appeal of a denial of a claim of ineffective assistance of counsel where an evidentiary hearing was held, we afford deference to the trial court's findings of fact based on competent, substantial evidence, and we independently review deficiency and prejudice as mixed questions of law and fact. See Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.1999).
As we stated in Hunter v. State, 817 So.2d 786, 792 (Fla.2002), a conflict of interest claim emanates from the Sixth Amendment guarantees of effective assistance of counsel. For claims of ineffective assistance of counsel based on a conflict of interest, the defendant must demonstrate that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's *872 performance. Id.[2]
At the evidentiary hearing, Pearl was examined and cross-examined for several hours. The trial court found that Pearl's status as a special deputy did not in any way affect his vigorous defense and posed no conflict of interest. In support, the trial court relied on the following: Pearl was characterized as a special deputy from 1970 through 1989 in Volusia and Marion Counties, and the only benefit he received from this status was his ability to carry a firearm. Pearl had no authority to act as a deputy, received no income, maintained no certification, had no training as a deputy, was issued no equipment, responded to no roll calls, was not included on any duty rosters, never held himself out as a law enforcement officer, never used his special deputy status to obtain information and never received any information due to this status. When Pearl could legally obtain a concealed weapons permit, he did so and thereafter resigned his status as a special deputy. Additionally, there was no evidence presented that Pearl enjoyed this same special deputy status in Putnam County, the site of Wright's trial. The trial judge concluded from these facts, which are supported in the record, that Pearl's status did not pose a conflict of interest.
We agree with the trial court's conclusion. Indeed, it appears that Pearl's status as a special deputy was an honorary one, carrying with it no duties or obligations to the sheriff's office. Furthermore, we have examined Pearl's status as a special deputy in similar circumstances and held that neither a per se nor actual conflict of interest existed. See Teffeteller v. Dugger, 734 So.2d 1009 (Fla.1999); Quince v. State, 732 So.2d 1059 (Fla.1999); Harich v. State, 573 So.2d 303 (Fla.1990).
Wright also asserts that Pearl's alleged conflict of interest caused him to render ineffective assistance of counsel. However, Wright has failed to demonstrate ineffective assistance because he has failed to demonstrate a conflict. Moreover, Pearl testified that his loyalty was to his clients and he denied that his efforts, actions, and representations on behalf of Wright were affected by his status as a special deputy.[3] The trial court correctly denied relief on this issue.

Claim 3

Judge Robert Perry's Alleged Conflict of Interest
Wright next claims he was denied due process because the trial judge, Judge Perry, now deceased, was also a special deputy sheriff at the time of trial and, as such, was biased. On this issue, the trial court found:
There was testimony that the trial [judge] may have been issued a card of some sort by the Putnam County Sheriff.

*873 However, there was no proof submitted that his name appeared on a list kept by the Sheriff's Office. Additionally, if one had been issued, it carried with it no privileges and meant nothing. There is not even a suggestion in the record that the trial judge ever used any such card in any manner, even if he had one. There is also nothing to even suggest that having any such card affected his rulings or conduct in any manner. As to the trial judge's disciplinary problems, there is absolutely nothing to show his work or his status had any bearing on the 3.850 hearing and his ruling herein.
Wright argues that Judge Perry's status, in and of itself, indicates that Wright was denied a fair and impartial judge during his trial. However, Wright presents no evidence that Judge Perry was not fair and impartial.
Wright also asserts that Judge Perry's status, in and of itself, would warrant disqualification. He argues that had he known of this information at the time of trial, he could have successfully moved to disqualify Judge Perry. A motion to disqualify a judge "must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy." Jackson v. State, 599 So.2d 103, 107 (Fla.1992). Wright fails to show that Judge Perry's mere possession of a special deputy card resulted in partiality and bias and would have required the granting of a motion to disqualify.
This record does not demonstrate that Judge Perry labored under a conflict of interest.

Claim 4

Sentencing Order Preparation
Wright argues that Judge Perry's "standard practice" was to have the State draft his trial orders.[4] There is no evidence in this case to support such a claim. The facts upon which Wright relies for this allegation come from deposition testimony that was filed in another case in which Wright was not involved. Just as a judge "cannot adopt the factual findings of a trial judge in a different case involving a different defendant," Wright, 581 So.2d at 886, Wright cannot cite facts in another case to support his claim here. See, e.g., Maharaj v. State, 778 So.2d 944, 951 (Fla. 2000) (stating that postconviction relief cannot be based on actions in another case or on speculation). This claim is therefore denied.

Claim 5

Due Process Claim Under Jones v. State
Wright claims he was denied due process because the trial court failed to timely rule on his motion to depose Judge Perry. In support, Wright cites this Court's decision in Jones v. State, 740 So.2d 520 (Fla.1999), in which we concluded that the trial court's twelve-year delay in conducting a hearing on competency to stand trial despite being ordered to do so by this Court required us to vacate the defendant's judgment and sentence. However, Wright makes no analysis or legal argument based on the facts in his case. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. See Atwater v. State, 788 So.2d 223 (Fla.2001); Kennedy v. State, 547 So.2d 912, 913 (Fla.1989) ("A defendant may not simply file a motion for postconviction relief *874 containing conclusory allegations that his or her trial counsel was ineffective...."). Wright has failed to demonstrate a due process violation.

Claim 6

Failure to Conduct Harmless Error Analysis
Wright's final 3.850 claim is also brief and lacks development and legal analysis. Wright argues that on his direct appeal this Court struck an aggravating factor and then failed to conduct any harmless error analysis as required by Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992). Rule 3.850 permits a criminal defendant to raise claims involving the trial court's judgment or sentence. See Fla. R.Crim. P. 3.850. This issue does not relate to the judgment or sentence, but rather, relates to this Court's opinion on direct appeal. This claim is inappropriate for 3.850 proceedings. As we stated in Hardwick v. Dugger, 648 So.2d 100, 103 (Fla.1995), "the trial court has no authority to review the actions of this Court." Thus, the trial court properly denied this claim.

PETITION FOR WRIT OF HABEAS CORPUS
Wright also petitions this Court for a writ of habeas corpus. For the reasons discussed below, we deny this petition.
The purpose of a writ of habeas corpus is to inquire into the legality of a prisoner's present detention. See McCrae v. Wainwright, 439 So.2d 868 (Fla.1983). Habeas corpus should not be used as a vehicle for presenting issues which should have been raised at trial and on appeal or in postconviction proceedings. Id. The habeas process is therefore most often used in death penalty cases to challenge the effectiveness of appellate counsel. See Patterson v. State, 664 So.2d 31, 31 (Fla. 4th DCA 1995) (citing a number of cases to illustrate the issues most often raised in habeas proceedings: ineffective assistance of appellate counsel, the denial of reasonable bail, and the legality of detention in extradition proceedings).
Wright raises four issues in his petition for writ of habeas corpus. Wright claims that (1) the State failed to disclose pertinent facts necessary for this Court's consideration; (2) appellate counsel failed to raise numerous meritorious issues on appeal; (3) the presiding judge unconstitutionally made factual findings in support of Wright's death sentence in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and (4) this Court failed to make an appropriate harmless error analysis after striking an aggravating circumstance on direct appeal, in violation of Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992). We deny relief on each issue.

Issue 1

Failure to Disclose Pertinent Facts
Wright first argues that the State intentionally deceived this Court regarding issues he raised in his direct appeal. In his direct appeal, Wright challenged numerous rulings made by the judge at trial. Wright now asserts that the State was in possession of, but did not divulge, pertinent information that would have favorably resolved his challenges on appeal. This is a claim that was or could have been presented in Wright's direct appeal or his 3.850 proceedings. Issues which were or could have been presented in prior proceedings cannot be reconsidered in a petition for writ of habeas corpus. See Mann v. Moore, 794 So.2d 595, 600-01 (Fla.2001). This procedural bar also acts to prohibit variant claims previously decided. See Jones v. Moore, 794 So.2d 579, 586 (Fla. 2001) (finding procedural bar to habeas *875 claim which was variant to claim previously addressed). This claim is therefore procedurally barred.
In a footnote to this claim, Wright also asserts that appellate counsel failed to address the State's misrepresentation in his reply brief, and thus rendered ineffective assistance of appellate counsel. While claims of ineffective assistance of appellate counsel are appropriate considerations in habeas corpus petitions, see Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000), Wright does not develop this issue beyond the bare assertion. In order to prevail on this issue, Wright would have to show that "[appellate] counsel's performance fell below an objective standard of reasonableness and, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different." Scott v. Dugger, 604 So.2d 465, 469 (Fla.1992). The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. See Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). Wright's conclusory allegation that appellate counsel was ineffective is legally insufficient.

Issue 2

Ineffective Assistance of Appellate Counsel
In his second claim, Wright argues that appellate counsel failed to raise numerous meritorious issues[5] which would have warranted reversal. Claims of ineffective assistance of appellate counsel are reviewed under the standard enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must demonstrate that counsel's performance was below that expected of competent counsel and that counsel's deficient performance resulted in prejudice to the defendant. However, claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been raised on direct appeal or in a postconviction motion. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). Much of Wright's claim that appellate counsel was ineffective involves issues that were not preserved for appeal by trial counsel and should have been raised in a 3.850 proceeding for ineffective assistance of trial counsel. Appellate counsel has no obligation to raise issues on appeal that were not preserved for review. See Robinson v. Moore, 773 So.2d 1, 4 (Fla.2000).
Specifically, Wright argues that "appellate counsel failed to raise the prosecutor's `knowing presentation of false argument to the jury.'" This claim was raised in Wright's first postconviction proceeding, see Wright v. State, 581 So.2d 882, 884 (Fla.1991), and will not be reconsidered in this habeas proceeding. See Mann v. Moore, 794 So.2d 595, 600-01 (Fla.2001) (finding that the defendant's claim was procedurally barred because the merits of the claim had been raised and rejected in two prior proceedings).
*876 Wright next argues appellate counsel failed to raise an issue regarding Wright's absence from the proceeding concerning the jury's request for a readback. In Wright's first motion for postconviction relief, he argued that the trial court committed reversible error by communicating by written note with the jury in his absence. The communications involved the same request for a readback Wright now raises in this habeas petition under the guise of ineffective assistance of appellate counsel. In affirming the denial of Wright's first postconviction motion, we adopted the trial court's written order which stated that a claim involving Wright's absence from the courtroom while the Court communicated with the jurors should have been raised on direct appeal. See Wright v. State, 581 So.2d 882, 885-86 (Fla.1991). However, there was no objection at trial to the procedure that was utilized in answering the jury's inquiry. Therefore, appellate counsel was not ineffective for failing to raise an unpreserved issue. See Freeman v. State, 761 So.2d 1055 (Fla.2000).
Moreover, the defendant has failed to demonstrate that the procedure employed by the trial court was erroneous. The jury communicated with the trial judge that it wanted some testimony reread. After consultation with both the defense attorney and the prosecutor, the judge sent a note to the jury asking for specificity in regards to what it wanted the court to reread. Once that information was ascertained, the State objected to the reading of the requested testimony, and defense counsel objected, saying all of the witness's testimony should be read or none. Therefore, the trial court decided no testimony would be read. In the presence of the defendant, the trial judge instructed the jury to rely on its collective memories regarding the testimony in question. This procedure was in substantial compliance with Florida Rule of Criminal Procedure 3.410, which governs jury requests to review evidence or receive additional instructions. Here, the judge's instruction was given to the jury in person and in the presence of all parties. See Hildwin v. State, 531 So.2d 124, 126 (Fla.1988) (finding that the judge violated the rule by failing to return the jury to the courtroom after receiving a jury request, but instead providing a written instruction for jurors to rely on their memory of the testimony).
Wright next argues that appellate counsel failed to raise the fact that Wright objected to the State's questioning of the hair expert. The hair expert was asked how many times she had been called upon to match hair strands, and of those occasions, how many times she was able to make a finding. Defense counsel objected, arguing that the testimony sought was not the result of a scientific test and was therefore "irrelevant and in terms of its scientific accuracy and reliability, incompetent." Defense counsel argued that he stipulated to the expert's experience, but that this question called for testimony related to statistical matters that was scientifically unreliable. The objection was not on the ground that the testimony was self-vouching, as Wright argues here. In order to preserve an issue for appellate review, the issue must be presented to the lower court and the specific legal argument or ground to be argued on review must be part of that presentation. Otherwise, the error is not considered preserved. See Tillman v. State, 471 So.2d 32, 35 (Fla.1985). As stated above, appellate counsel is not ineffective for failing to raise on appeal an issue that was not preserved. See Freeman, 761 So.2d 1055.
Next, Wright asserts that appellate counsel failed to adequately reply to the State's answer brief on appeal. Wright fails to make the appropriate showing for *877 consideration of a claim of ineffective assistance of counsel under Strickland, and his conclusory allegations are insufficient to warrant relief. See Kennedy v. State, 547 So.2d 912, 913 (Fla.1989).
Wright also argues that appellate counsel failed to challenge both his and trial counsel's absence from an off-the-record conference between the trial judge and at least one potential juror, after which the judge excused the juror. The record indicates that defense counsel was present in the courtroom when the trial judge conducted his initial inquiries to the jury panel. In the initial inquiry phase, the trial judge introduced court personnel and invited the potential jurors to approach the bench if they had any hardships that would prevent them from serving. After this invitation, there was an off-the-record discussion, whereupon the judge announced that he would excuse juror number 125 because that juror was the only available paramedic and full-time fire personnel in the community. Defense counsel made no objection to the off-the-record discussions between the judge and persons who approached the bench to discuss a potential hardship.
During the general qualification process under section 40.013(6), Florida Statutes (1997), removal of a potential juror for hardship is within the trial court's discretion. See Jones v. State, 749 So.2d 561, 562 (Fla. 2d DCA 2000). The Fifth District recently described the juror qualification proceeding stating, "Counsel or a defendant does not ordinarily participate in this type of qualification process, although neither is excluded from doing so. In many instances, counsel and the defendant are not present because this preliminary qualification process occurs days prior to the trial." O'Quendo v. State, 823 So.2d 834, 836 (Fla. 5th DCA 2002). In this case, the record does not indicate whether defense counsel participated in the off-the-record discussions with the potentially disqualified jurors. However, the record clearly indicates no objection was raised by defense counsel to the off-the-record discussions or the disqualification of any juror. Because the issue was not preserved at trial, appellate counsel cannot be deemed ineffective for failing to raise the issue on appeal. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000) ("[I]neffective assistance of counsel cannot be argued where the issue was not preserved for appeal....").
Finally, Wright argues that appellate counsel failed to raise as error the trial judge's statement to the venire that the judge is responsible for sentencing decisions. This issue could have been raised on direct appeal if trial counsel had preserved the error. Appellate counsel cannot be considered ineffective for failing to raise issues which were not properly raised at trial or preserved for review. See Freeman.

Issue 3

Apprendi v. New Jersey
Wright's third claim involves the constitutionality of his sentence based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Apprendi holds that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.[6] The Supreme Court has recently extended the *878 holding in Apprendi, making it applicable to capital cases. See Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We have subsequently considered the effect of Ring on Florida's capital sentencing scheme in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). In Bottoson and King, we discussed the application of Ring and Apprendi to Florida's capital sentencing scheme, and rejected the constitutional challenge, as we do here. We also note that Wright was found guilty by the same jury of burglary and sexual battery beyond a reasonable doubt. Therefore, we deny relief on this claim.[7]

Issue 4

Failure to Reweigh Aggravating and Mitigating Circumstances
Finally, Wright argues that this Court struck an aggravating circumstance on direct appeal and failed to reweigh the remaining aggravating and mitigating circumstances as required by Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992). Wright also seems to argue that there was mitigating evidence presented that should have been found by the trial court.
On direct appeal, we affirmed the trial court's order finding there were no mitigating circumstances. See Wright, 473 So.2d at 1282. Wright did not raise this claim in a motion for rehearing following our opinion in his initial appeal. We therefore conclude that he abandoned this claim. See Lightbourne v. State, 841 So.2d 431, 442 (Fla.2003) (finding that a claim which could have been raised in a motion for rehearing but was not was abandoned and procedurally barred from consideration in a postconviction proceeding); see also Garcia v. State, 816 So.2d 554, 569 (Fla.2002). Therefore, to the extent Wright argues this Court erred in failing to find the existence of mitigation, this claim is procedurally barred.
We also deny Wright's claim made pursuant to Sochor v. Florida. On direct appeal, we struck the cold, calculated, and premeditated (CCP) aggravating factor, finding that the degree of heightened premeditation necessary for CCP was not proved beyond a reasonable doubt. We stated: "Because the court properly found there were no mitigating and three aggravating circumstances, we conclude the imposition of the death penalty was correct and find it unnecessary to remand for a new sentencing hearing. We also find the imposition of the death penalty in this case is proportionately correct." Wright, 473 So.2d at 1282 (citations omitted). We note that both our decision on direct appeal and our decision in Wright's appeal of the denial of his first 3.850 motion were issued prior to the Supreme Court's decision in Sochor. This habeas petition, filed nearly ten years after this claim arose, is the first time Wright has presented this issue for our review.[8]
We conclude that even after removing CCP from consideration of the valid aggravating circumstances, three valid aggravating circumstances[9] remain and no *879 valid mitigating circumstances exist. "Striking one aggravating factor when there are no mitigating circumstances does not necessarily require resentencing because, `[i]f there is no likelihood of a different sentence, the error must be deemed harmless.'" Sochor v. State, 619 So.2d 285, 293 (Fla.1993) (quoting Rogers v. State, 511 So.2d 526, 535 (Fla.1987)). Under the circumstances of this case, we find that there is no likelihood of a different sentence even if the CCP aggravator had been eliminated from the trial court's consideration. Thus, the trial court's reliance on the unsupported aggravator was harmless error. See Bruno v. Moore, 838 So.2d 485 (Fla.2002); Sochor, 619 So.2d at 293. We therefore deny relief on this claim.

CONCLUSION
For all of the reasons stated above, we affirm the trial court's denial of postconviction relief. We also deny Wright's petition for a writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, and QUINCE, JJ., and SHAW, Senior Justice, concur.
LEWIS, J., concurs in result only.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
ANSTEAD, C.J., concurring in part and dissenting in part.
For the reasons I expressed in my opinion in Duest v. State, No. SC00-2366, 855 So.2d 33, 2003 WL 21467248 (Fla. June 26, 2003), I cannot agree with the majority's discussion of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
The trial judge in this case found four aggravating circumstances, including that the murder was committed after the defendant committed burglary and sexual battery.[10] The majority is rejecting the Ring claim on the ground that the jury's guilt phase verdict finding the defendant guilty of burglary and sexual battery may be used to support the judge's finding of the aggravating circumstance based on the burglary and sexual battery.[11] Of course, this ignores the fact that there is no support in Florida's statutory death penalty scheme authorizing the Court to do this. Moreover, this holding ignores the fact that the trial judge found three important additional aggravating circumstances and expressly utilized them in imposing the death sentence. These additional findings included an aggravating circumstance that we struck on appeal. See Wright, 473 So.2d at 1282 (holding that the trial court erred in finding that the murder was cold, calculated, and premeditated).[12] Hence, *880 the death sentence in this case was expressly predicated upon factual findings made by the judge alone, a practice directly contrary to the express mandate of Ring forbidding sentences based upon circumstances found by the judge alone.
NOTES
[1] Wright also asserts that when we conduct our analysis of the prejudicial effect of any error, we must consider the evidence that would have been presented but for the ineffectiveness of trial counsel. Wright presented a claim of ineffective trial counsel at the first postconviction proceeding. We held then that Wright failed to meet his burden of showing deficient performance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Wright, 581 So.2d at 883. We did not address the prejudice prong of the Strickland test. Because Wright failed to show deficient performance of trial counsel, we will not address the evidence Wright alleges would have been presented at trial but for the ineffectiveness of counsel. See Downs v. State, 740 So.2d 506, 518 n. 19 (Fla.1999).
[2] Wright has previously litigated other claims of ineffective assistance of counsel, and this Court affirmed the trial court's determination that counsel's performance was not deficient. See Wright v. State, 581 So.2d 882, 886 (Fla. 1991). Thus the only issue now before this Court is whether defense counsel had an actual conflict of interest that caused him to render ineffective assistance. See Herring v. State, 730 So.2d 1264 (Fla.1998).
[3] Wright argues that Pearl's investigator, Freddie Williams, was a special deputy as well, and that Williams' status also amounts to the denial of effective assistance of counsel. There is no evidence in support of this claim. The mere fact that Williams was a member of Wright's "defense team," and was a special deputy, without more, falls short of the demonstration Wright must make in support of this claim as set forth in Quince v. State, 732 So.2d 1059 (Fla.1999). Although Williams testified at the evidentiary hearing, he was not questioned about his status as a special deputy.
[4] This issue was not addressed in the trial court's order denying postconviction relief, but was raised by the defendant in the supplemental 3.850 motion.
[5] Specifically, Wright argues that appellate counsel (1) failed to raise the prosecutor's "knowing presentation of false argument" to the jury; (2) failed to raise the issue regarding Wright's absence from the proceeding during the jury's request for a readback; (3) failed to raise the fact that Wright objected to the State's questioning of the hair expert; (4) in the appellate reply brief, failed to contest the State's assertion that Wright had not objected to the investigator's testimony at trial; (5) failed to challenge Wright's absence from the initial inquiry of potential jurors regarding their qualifications; and (6) failed to raise as error the trial judge's statement to the venire that the judge is responsible for sentencing decisions.
[6] While the Supreme Court extended Apprendi to capital sentencing schemes in Ring, it did not alter the exception for prior convictions. In this case, Wright was also convicted of sexual battery, burglary, and grand theft.
[7] We hereby deny Wright's motion to file supplemental briefing on the Apprendi/Ring issue.
[8] Time limitations for raising claims in petitions for writs of habeas corpus were introduced in October 2001. See Fla. R.Crim. P. 3.851.
[9] The remaining valid aggravating circumstances are: (1) the murder took place after the defendant committed rape and burglary; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest; and (3) the murder was especially heinous, atrocious, or cruel.
[10] In our opinion on direct appeal, we indicated that the trial court found the following aggravating circumstances:

(1) the murder took place after the defendant committed rape and burglary; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest; (3) the murder was especially heinous, atrocious, and cruel; (4) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
Wright v. State, 473 So.2d 1277, 1281 (Fla. 1985).
[11] In footnote 6, the majority seems to rely in part on Wright's contemporaneous conviction of second-degree grand theft as a basis for rejecting the claim, although grand theft is not one of the crimes listed as a statutory basis for finding this aggravating circumstance. § 921.141(5)(d), Fla. Stat. (1983).
[12] Because we have not yet determined how our Ring analysis would be affected in situations where an aggravating circumstance is struck, I would also grant Wright's motion to file supplemental briefing on the Apprendi and Ring issue.