No. 85–5747. WRIGHT v. FLORIDA. Sup. Ct. Fla. Certiorari denied.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

I would grant certiorari in this capital case to ensure that the Florida courts have not sentenced a man to die based on a conviction obtained in violation of the Sixth Amendment.

On February 6, 1983, a woman was found murdered in the bedroom of her home. She apparently had died the previous night after being raped and stabbed. All the doors to her home were locked, but a back window was found open. Several weeks later, Charles Westberry told his wife that petitioner Joel Wright had come to Westberry's trailer shortly after daylight on the morning of February 6 and had confessed to killing the victim. Wright lived with his parents near the victim's home. Westberry's wife notified the police, and Wright was arrested and tried for the crime. At trial, Westberry was the State's principal witness. He testified that Wright had told him on the morning of February 6 that Wright had entered the victim's house through the back window to steal money, that the victim had discovered him as he was wiping his fingerprints from her purse, and that he had killed her because he did not want to return to prison. According to Westberry, Wright counted out $290 he claimed to have taken from the victim's home, and he asked Westberry to tell the authorities that Wright had spent the previous night at Westberry's

trailer. Another witness for the State testified that, approximately one month before the murder, he and Wright had stolen money from the victim's home after entering through the window later found open on February 6. The jury also was told that a fingerprint identified as Wright's had been found on a portable stove in the victim's bedroom.

Wright took the stand and denied involvement in the murder. He testified that he had returned home from a party at approximately 1 a. m. on February 6, but had found himself locked out. He claimed that he then had walked along Highway 19 to Westberry's trailer, where he had spent the night. He also presented a witness who testified that, late on the night of February 5 and early in the morning of February 6, he had seen a group of three men, whom he had not recognized, in the general vicinity of the victim's home.

· After the close of evidence but prior to final arguments, the defense moved to reopen the case in order to introduce the testimony of a newly discovered witness, Kathy Waters. Waters apparently had read newspaper accounts of the trial, had listened to parts of the testimony, and had discussed the trial with friends in attendance. She offered to testify that, shortly after midnight on February 6, she had seen a person who could have been Wright walking along Highway 19, and had also observed three persons she did not recognize near the victim's home. Waters claimed that she had not realized she possessed relevant information until the morning her testimony was proffered, and that she had come forward of her own volition. The trial judge denied Wright's motion, noting that Florida's sequestration rule would be rendered "meaningless" if, after discussing the case with others, a witness were permitted "to testify in support of one side or the other, almost as if that testimony were tailor-made." 473 So. 2d 1277, 1279 (1985). Although the State acknowledged that the violation of the sequestration rule had been inadvertent, it argued that the prosecution "could very well be substantially prejudiced" if Waters were permitted to testify. *Id.*, at 1280. Wright was convicted and sentenced to die.

On appeal, the Supreme Court of Florida held that the trial judge's rigid application of the State's sequestration rule was inconsistent with Wright's Sixth Amendment right to present witnesses in his behalf. The court affirmed the conviction, however, because it deemed the error harmless:

"The record already contained unrefuted testimony that three individuals were gathered near the victim's home. The defense did not contend that the proffered witness would purport to identify [Wright] as the person she observed on the road or that her testimony, if accepted by the jury, would require a finding by the jury that [Wright] did not commit the murder. Based upon our review of the record, including the nature of the proffered testimony, we conclude that the excluded evidence would not have affected the verdict and its exclusion was harmless beyond a reasonable doubt." 473 So. 2d, at 1280–1281.

The State Supreme Court thus recognized that a conviction resulting from a trial marred by constitutional error must be reversed unless the error was "harmless beyond a reasonable doubt." *Chapman* v. *California*, 386 U. S. 18, 24 (1967); see also, *e. g.*, *United States* v. *Hasting*, 461 U. S. 499 (1983). It seems to me, however, that the court failed to show the requisite attentiveness to the possibility of prejudice. A constitutional violation may be excused under *Chapman* only if the State "prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U. S., at 24. It is not sufficient for a reviewing court to conclude, as the Supreme Court of Florida appears to have done in this case, that in its judgment the error did not change the verdict. The question is whether the State has disproved any "reasonable possibility" that the error made a difference. *Ibid.; Fahy* v. *Connecticut*, 375 U. S. 85, 86 (1963).

The State of Florida may well be able to carry that burden in this case, but nothing in the Supreme Court's opinion or in the State's brief before this Court convinces me that it has done so. Since Wright's fingerprint could have been left during the alleged earlier break-in, this case comes down to Wright's word against Westberry's. Waters' testimony obviously would not have proved Wright innocent, but it would have provided some corroboration for Wright's story. Questions of witness credibility, of course, are within the "special province" of the factfinder, *Inwood Laboratories, Inc.* v. *Ives Laboratories, Inc.*, 456 U. S. 844, 856 (1982), and I cannot say "beyond a reasonable doubt" that the corroboration Waters offered could not have altered the jury's assessment of the conflicting stories. More to the point, I do not

see how the Supreme Court of Florida could make that statement, particularly given the prosecution's claim of potentially substantial prejudice and the trial judge's suggestion that Waters' testimony appeared almost "tailor-made" for the defense.

The *Chapman* rule was meant to be more than merely a formula to incant before affirming the results of constitutionally infirm prosecutions. For the rule to have content, a reviewing court must not declare a constitutional error harmless without first conducting a careful and probing inquiry into the possibility of prejudice. Nothing less will suffice if the court is to be convinced "beyond a reasonable doubt" that the error had no effect on the verdict. Furthermore, at least in any case where the harmlessness of an error is as questionable as it is here, an appellate court should spell out its reasoning in sufficient detail to permit this Court to verify compliance with *Chapman*. Our concern of course must be not merely that *Chapman* is cited, but that it is followed conscientiously. For me, that concern is not satisfied by the opinion of the Florida Supreme Court in this case, particularly given the sentence imposed. Consequently, I would grant certiorari, vacate the judgment, and remand for a determination whether there is any "reasonable possibility" that the automatic exclusion of Waters' testimony contributed to Wright's conviction.