581 So.2d 882 (1991)
Joel Dale WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 74775.
Supreme Court of Florida.
May 9, 1991.
Rehearings Denied July 26, 1991.
Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, K. Leslie Delk and Bret B. Strand, Special Asst. Capital Collateral Representatives, Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Joel Dale Wright appeals the trial court's denial of his motion for postconviction relief under rule 3.850, Florida Rules of Criminal Procedure.[1] We affirm the denial of the claims presented in the initial motion for relief, but we find that we must remand for further proceedings on Wright's supplemental claim that his trial counsel's appointment as a special deputy sheriff resulted in ineffective assistance of counsel in Wright's trial.
The following is a brief history of this cause. Joel Dale Wright was charged with killing a seventy-five-year-old Palatka school teacher. On September 1, 1983, he was convicted of first-degree murder, sexual battery, burglary of a dwelling, and grand theft. The jury returned an advisory sentence of death and the trial court, in accordance with that recommendation, imposed the death sentence. This Court affirmed the convictions and the sentence of death in Wright v. State, 473 So.2d 1277 (Fla. 1985), cert. denied, 474 U.S. 1094, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986). A more detailed statement of the facts is contained in that opinion.
*883 Wright filed a Florida Rule of Criminal Procedure 3.850 motion in February, 1988, and the trial court granted an evidentiary hearing. After hearing two days of testimony and argument on the claims asserted, the trial court denied relief in an extensive order, the pertinent parts of which are set forth as follows:
"1. Defendant alleges in Claim I, Subpart A, that the State withheld exculpatory material in violation of Brady v. Maryland, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), by failing to provide the defense with an alleged "script" supplied to the State's key witness, Charles Westberry. Brady material is evidence favorable to an accused and suppressed by the State. The so-called script furnished to Westberry would not tend to exonerate the Defendant. Both the former prosecutor and Westberry testified at the evidentiary hearing that the document contained a summary of Westberry's prior statements, in Westberry's own words... . [T]he so-called script is not Brady material and the Defendant's claim does not warrant relief.
"Claim I, Subpart B, alleges that the State entered into a secret contract of immunity with Westberry. At the evidentiary hearing, Westberry specifically denied entering into a secret deal with the State... . According to the former prosecutor, there was a contract of immunity entered into on July 19, 1983 with Westberry but the defense counsel fully cross-examined Westberry about the immunity contract at trial. Consequently, the jury was aware of this deal and able to believe or disbelieve the witness... .
"Subpart C alleges a violation of discovery in that the State suppressed exculpatory evidence concerning the statements of Wanda Brown, Kimberly Holt and Charlene Luce. The investigator for the Public Defender's Office, Mr. Freddie Williams, testified that he was aware of the statements by Brown and Luce... . Mr. Williams and defense counsel worked closely together and it is likely that defense counsel was made aware of the statements through Mr. Williams. Additionally, defense counsel testified that he knew of the incident involving Ms. Holt and, in fact, had interviewed her with Mr. Williams but that he had never seen the statement given by Ms. Holt to the authorities... . Whether the statements were exculpatory in nature is highly speculative and, thus, the claim is legally insufficient to support a claim under Brady. Gorham v. State, 521 So.2d 1067 (Fla. 1988).
"2. In Claim II the Defendant alleges ineffective assistance of counsel at both the guilt and sentencing phases of the trial, including allegations that are also claimed in subsequent claims contained herein. Some examples of the numerous allegations include trial counsel's failure to impeach key state witnesses, failure to make objections, failure to prevent introduction of other crimes, etc. Such allegations are completely without merit. "It is well established that for relief to be granted pursuant to a claim of ineffective assistance of counsel, a defendant must show that counsel's conduct included a specific omission or overt act which was a substantial and serious deficiency, measurably below that of competent counsel. Then, it must be shown that counsel's performance was prejudicial to the defense." Atkins v. Dugger, Nos. 73,869 and 73,910 [541 So.2d 1165] (Fla. Apr. 13, 1989). Defendant's offer of proof with regard to his allegations of ineffective assistance of trial counsel are insufficient to demonstrate deficient conduct below those professionally recognized and accepted standards of professional conduct as enunciated by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). Additionally, the majority of the alleged errors are strategic in nature and this Court will not second guess trial strategy employed by trial counsel.
"3. The Defendant claimed in Claim III that defense counsel was ineffective for failure to call additional witnesses to testify as to the Defendant's character. Trial counsel made a strategic decision as to which witnesses to call to testify on behalf of the Defendant. It was then up to the jury whether to believe the witnesses presented by the defense or the State. *884 Clearly, such a tactical decision is not subject to collateral attack.
"The Defendant also alleges in Claim III that use by trial counsel of a juvenile psychiatric evaluation was ineffective assistance of counsel. Defense counsel testified at the evidentiary hearing that the decision to use the evaluation was "a balancing act." Defense counsel testified that he was unsure what a current evaluation would disclose and chose to go forth with the previous examination... . Again, defense counsel made a tactical decision which is not subject to collateral attack.
"4. Defendant alleges in Claim IV that the failure to change venue violated several Constitutional amendments. Challenges to venue should be raised on direct appeal and are, therefore, not cognizable on a motion for relief pursuant to Fla.R.Crim.P. 3.850. Henderson v. State, 522 So.2d 835 (Fla. 1988). Additionally, the Defendant was allowed additional [peremptory] strikes, a larger venire panel, and an opportunity to renew the motion to change venue if an impartial jury could not be empaneled. Defense counsel evidently believed he had a fair and impartial jury because he had approximately two to three strikes remaining after a panel was selected. Consequently, this claim does not warrant relief... .
"5. Defendant's allegation in Claim V as to juror misconduct was previously determined by this Court to be an issue inhering in the verdict and not the subject of external influence... .
"6. Claim VI alleging Miranda violations should have been raised on direct appeal. In his claim, the Defendant alleges that allowing the deputy sheriff to testify to the statement that, "If I confess to this, I'll die in the electric chair. If I don't talk I stand a chance of living," allegedly made by the Defendant after being advised of his Miranda rights was in violation of his Fifth Amendment Right to Silence. The statement was clearly voluntary as the Defendant had just been advised of his Miranda rights. Even accepting that the statement was taken in violation of Miranda, the Supreme Court of Florida has held that allowing such statements to be admitted at trial was harmless error, when, as in the instant case, the improper statement was not the primary evidence linking the Defendant to the crime, but rather cumulative to the evidence presented by the key witness. Alvord v. Dugger, (Fla. 1989). [541 So.2d 598 (Fla. Feb. 9, 1989).] Therefore, even if the Defendant's allegation of a Fifth Amendment violation is taken as true, the Defendant's claim is insufficient to merit relief.
"7. Defendant's allegation in Claim VII that defense counsel was unable to fully cross-examine Westberry concerning his involvement with the Defendant in dealing in scrap metal should have been raised on direct appeal, as this issue was contained in the Defendant's Statement of Judicial Acts to be Reviewed filed on October 14, 1983... .
"8. Claim VIII concerns the exclusion of testimony by Kathy Waters. This issue was addressed on direct appeal and determined to be harmless error by the Florida Supreme Court. Wright v. State, supra.
"9. Claim IX concerns an allegation by the Defendant that he should have been allowed to present evidence that the victim's house had been burglarized regularly. Actually, the jury was informed that the victim's house had recently been burglarized... . The objection which was sustained by the Court merely disallowed the witness from testifying as to the number of break-ins as told to the witness by the victim and not to the fact that there were "numerous break-ins in the last two weeks."... Clearly the jury was aware of the previous break-ins to the victim's home. As the Defendant pointed out, the jury was never instructed to disregard the witnesses' response by the Court, and it is highly unlikely that the jury would misunderstand the objection and disregard the statement by the witness. As to the claim of ineffective assistance of counsel, defense counsel did make an attempt to continue questioning the witness about the number of break-ins but the Court sustained the State's objection.
"The Defendant also alleges that defense counsel should have called a particular witness *885 to testify as to those persons that the victim suspected were involved in the previous break-ins. Such a decision is strategic in nature and, consequently, not subject to collateral attack. Neither defense counsel's failure to continue questioning a witness when the State's objection had been sustained by the Court, nor the failure to call this particular witness was a "substantial and serious omission measurably below that of competent counsel." Knight v. State, 394 So.2d 997, 1001 (Fla. 1981). Therefore, both claims of ineffective trial counsel included in Claim IX are denied.
"10. Claim X alleges prosecutorial misconduct for statements made during the State's closing argument. It is this Court's opinion that the prosecutor did not overstep the bounds with his closing remarks to the jury. Mills v. State, 507 So.2d 602 (Fla. 1987). Additionally, such a claim could have and should have been raised on direct appeal. Adams v. State, 380 So.2d 423 (Fla. 1980). As to the claim of ineffective assistance of counsel, the Defendant failed to show that defense counsel's failure to object to the prosecutor's alleged improper remarks was a "substantial and serious deficiency measurably below that of competent counsel," even when taking into consideration that the instant case is a death penalty case. Knight v. State, supra.
"11. In Claim XI, the Defendant alleges that the jury should have been instructed on voluntary intoxication. Clearly, challenges to jury instructions should be raised on direct appeal. Henderson v. State, supra. As to the issue that trial counsel was ineffective for failing to request an instruction on voluntary intoxication, the Supreme Court of Florida held in Buford v. State, 492 So.2d 355, 359 (Fla. 1986), that the decision to include a voluntary intoxication instruction is tactical and, therefore, not subject to collateral attack. Defense counsel testified at the evidentiary hearing that he had considered the instruction and had rejected it... . This Court will not second guess strategy employed by trial counsel.
"12. Claim XII concerns the Defendant's absence from the courtroom while the Court communicated with the jurors upon their written questions during deliberations. Such a claim should have been raised on direct appeal. Mills v. State, supra, and Henderson v. State, supra.
"13. In Claim XIII, the Defendant alleged that the burden of proof was improperly shifted by the trial court in its instructions to the jury during the penalty phase in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633 [86 L.Ed.2d 231] (1985). Such a claim should have been raised on direct appeal. Henderson v. State, supra. Additionally, as in Ford v. State, 522 So.2d 345 (Fla. 1988), the Defendant's claim "could not be sustained on its merits because, unlike Caldwell, in Florida the judge rather than the jury is the ultimate sentencing authority." Ford at 346.
"14. The Defendant alleges in Claim XIV that the sentencing jury was misled by instructions that diluted their sense of responsibility for sentencing in violation of Caldwell. Such a challenge should have been raised on direct appeal. Ford v. State, supra, and Henderson v. State, supra.
"15. Claim XV also challenges instructions to the jury, specifically those concerning the jury's function at capital sentencing, and is similarly denied because the issue should have been raised on direct appeal. Mills v. State, supra, Ford v. State, supra, and Henderson v. State, supra.
"16. Claim XVI alleges that the statutory aggravating factor of heinous, atrocious or cruel was unconstitutionally applied. Such a challenge is also not cognizable in a 3.850 motion. Henderson v. State, supra.
"17. Claim XVII addresses the introduction of non-statutory aggravating circumstances. This issue should have been raised on direct appeal. MacCrae [McCrae] v. State, 510 So.2d 874 (Fla. 1987), and Henderson v. State, supra. As to the allegation of ineffective assistance of counsel for allowing the Defendant's juvenile record to be admitted, defense counsel made a strategical decision to allow the introduction of the Defendant's juvenile *886 record and such tactical decisions will not be second guessed by this Court.
"18. The final claim, Claim XVIII, concerns alleged duplication of aggravating factors. Such an issue should have been raised on direct appeal and is not cognizable on a motion for post-conviction relief. Henderson v. State, supra."
After the trial court had denied relief, but while the matter was pending on a motion for rehearing, appellant filed a motion to amend and supplement his rule 3.850 motion, asserting a conflict of interest between trial counsel's position as a special deputy sheriff and trial counsel's duties as a defense attorney. In considering this supplemental issue, the trial court, in its order, noted:
The Honorable S. James Foxman, Circuit Judge, Seventh Judicial Circuit, held an evidentiary hearing pursuant to a mandate from the Supreme Court of Florida regarding the alleged conflict of interest between Roy Allen Harich's trial counsel's position as a special deputy sheriff and counsel's duties as a defense attorney. Roy Allen Harich was represented at trial by an Assistant Public Defender for the Seventh Judicial Circuit, Mr. Howard Pearl. Mr. Pearl also represented the Defendant in the case herein. In his Order Denying 3.850 Relief entered on June 21, 1989, Judge Foxman found no actual, implied, or per se conflict. This Court obtained a copy of the Motion for Post-Conviction Relief filed by defense counsel on behalf of Roy Allen Harich and a comparison of the two motions revealed that they were essentially identical. Consequently, this Court granted the Defendant fifteen (15) days in which to advise the Court of any evidence not contained in the Motion dated June 22, 1989, or any additional witnesses which would warrant any further review of/or an evidentiary hearing in this issue.
In denying relief on this ground, the trial court stated:
1. The Defendant, in his Response, failed to furnish the Court with any new evidence, such as a list of new witnesses or new allegations, per the Order of this Court entered on August 2, 1989. The Response merely reasserts the allegations contained in the Motion for Rehearing.
2. This Court approves and adopts the findings of Judge Foxman in his Order Denying 3.850 Relief and the reasoning therein. This Court has known Howard Pearl for over thirty years and he has never compromised his advocacy for any reason.
We find that the trial court properly denied relief on each of the claims made in Wright's initial rule 3.850 motion. With regard to the claim that the witness Westberry had made a secret contract of immunity with the state, we note that Westberry testified at the evidentiary hearing that the state attorney never promised him that he would not be prosecuted on the scrap metal thefts. Moreover, the prosecutor testified that he found out about the scrap metal thefts after he had given Westberry immunity on the murder. Further, this record reflects that defense counsel was aware of the scrap metal thefts and, in fact, proffered testimony at trial regarding this activity. On the basis of this record, we find that the trial judge properly denied relief on this claim.
With regard to Wright's claim of conflict due to his public defender's service as a special deputy, we find, as we did in Herring v. State, 580 So.2d 135 (Fla. 1991), that due process principles require an evidentiary hearing. While it may seem to be a total duplication of effort, it is clear that the trial judge in this case cannot adopt the factual findings of a trial judge in a different case involving a different defendant, even though those findings concern the same issue. While we might prefer to resolve this issue differently for judicial administration purposes, Wright must be afforded an opportunity to present evidence and examine and cross-examine witnesses on this issue. As we stated in Herring, the chief judge may consolidate this case with other cases in which defendants make this identical claim.
*887 Accordingly, we affirm the denial of relief on all grounds set forth in the initial motion, but we find that we must remand for an evidentiary hearing on whether Wright's public defender's service as a special deputy sheriff affected his ability to provide effective legal assistance.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
I would affirm the trial judge's denial of relief in all respects.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.