995 So.2d 324 (2008)
Joel Dale WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-2353.
Supreme Court of Florida.
September 25, 2008.
Rehearing Denied November 20, 2008.
*326 Neal A. Dupree, Capital Collateral Regional Counsel, and Martin J. McClain, Special Assistant CCR Counsel, Southern Region, Fort Lauderdale, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
Joel Dale Wright appeals the denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851. Wright also appeals the trial court's denial of his second motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.; Fla. R.Crim. P. 3.853. We affirm the trial court's denial of relief under both rules.

FACTS AND PROCEDURAL HISTORY
The facts of this case are set forth in Wright's direct appeal. See Wright v. State, 473 So.2d 1277, 1279 (Fla.1985); see also Wright v. Florida, 474 U.S. 1094, 1094-95, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986) (Blackmun, J., joined by Brennan, J., and Marshall, J., dissenting) (presenting the pertinent facts of the case). The procedural history of this case is outlined in Wright v. State, 857 So.2d 861 (Fla. 2003).
Wright filed a motion in the circuit court seeking DNA testing pursuant to rule 3.853. The motion requested mitochondrial DNA testing of a pubic hair contained in a rape kit and head hairs that were found on the dress worn by the victim at the time of her death. The hairs were introduced into evidence at Wright's trial. The circuit court granted the motion, and in a later order, the court directed that the hair samples be sent to MitoTyping Technologies, Inc., in State College, Pennsylvania, for mitochondrial DNA testing. MitoTyping Technologies, Inc., forwarded a report on its analysis of the hairs. The lab concluded that Wright, the victim, and their maternal relatives were not the contributors of the two tested hairs. It was also concluded that the mitochondrial DNA sequences of the two tested hairs were different; thus, two different people contributed the hairs.
In addition, the trial judge ordered the Florida Department of Law Enforcement (FDLE) to determine whether a semen sample that was in the rape kit was suitable for testing. The Jacksonville FDLE office performed the nuclear DNA testing *327 and filed a report that indicated the DNA profile of the sperm fraction from the vaginal swab and slide matched Wright's DNA profile.
During the time the DNA testing was being performed, Wright filed a motion with the circuit court for postconviction relief. Wright raised two claims: (1) newly discovered evidence of affidavits by Ronald Thomas and Idus Hughes, which essentially allege that on the night the victim was killed Henry Jackson and two other men were standing across the street from the victim's home, and that while Thomas was in the county jail a police detective told Thomas that he would be put in a cell with Charles Westberry at the city jail and that Thomas was to find out what Charles Westberry did with the bloody clothes; and (2) a request for additional DNA testing of the semen samples. After a nonevidentiary hearing, the trial court denied relief on both claims. Wright's motion for rehearing was denied and this appeal followed.

MOTION FOR POSTCONVICTION RELIEF

I. Rule 3.851 Claim
When reviewing a circuit court's summary denial of a successive rule 3.851 motion, we will accept the movant's factual allegations as true to the extent they are not refuted by the record, and we will affirm the ruling if the record conclusively shows that the movant is entitled to no relief. See Fla. R.Crim. P. 3.851(f)(5)(B). Wright contends that he is entitled to relief because the Thomas and Hughes affidavits demonstrate a Brady[1] violation, a Giglio[2] violation, ineffective assistance of counsel, and newly discovered evidence. We disagree and hold that the circuit court's summary denial was appropriate. This is Wright's third postconviction motion. The Thomas and Hughes affidavits do not put this case in a new light. We found on Wright's direct appeal that the record contained unrefuted testimony that three individuals were gathered near the victim's home. Wright, 473 So.2d at 1280. The fact that Idus Hughes and Ronald Thomas have come forward with information about Henry Jackson and that three individuals were gathered near the victim's home does not affect the guilt or punishment of this defendant. See Wright, 857 So.2d at 870; see also Tompkins v. State, 980 So.2d 451, 458-59 (Fla.2007) (noting that the statements in the affidavit do not provide any new information), cert. denied, ___ U.S. ___, 128 S.Ct. 895, 169 L.Ed.2d 747 (2008). Therefore, Idus Hughes' and Ronald Thomas's affidavits, when considered with the other evidence presented at trial, are not of such nature that they would probably produce an acquittal on retrial. Jones v. State, 591 So.2d 911, 915 (Fla.1991) (Jones I). Accordingly, the trial court properly denied relief on this claim.

II. Rule 3.853 Claim
Wright claims that the trial court erred when it relied upon DNA testing results to deny Wright's claims when the FDLE report was not in evidence and had never been subject to an adversarial proceeding. However, it was Wright who asked for the DNA testing. Wright cannot subsequently complain on appeal when the testing he sought produces an unfavorable result. Moreover, on a motion for postconviction relief alleging newly discovered evidence, the circuit court considers all admissible evidence when evaluating *328 whether a new trial is warranted. See Green v. State, 975 So.2d 1090, 1101 (Fla. 2008) (citing Jones I, 591 So.2d at 915). This includes new evidence of guilt. See id. Therefore, the trial court did not err when it relied upon the DNA results to deny Wright's claims.
Wright further argues that the circuit court erred by denying him the opportunity to have an expert conduct independent testing and review FDLE's DNA testing. When denying Wright's motion for additional DNA testing, the circuit court followed Florida Rule of Criminal Procedure 3.853(c)(7). After a hearing on the issue, the circuit court denied additional testing because Forensic Science Associates is not an accredited lab under rule 3.853. In Swafford v. State, 946 So.2d 1060 (Fla.2006), we denied a similar claim concerning a lab that was not accredited. Accordingly, we affirm the circuit court's denial of Wright's motion for additional DNA testing.
Additionally, Wright contends that the DNA results of the pubic and head hairs establish Wright's entitlement to a new trial. The DNA testing showed that the pubic hairs and the head hairs did not come from Wright or the victim. Wright argues that under Jones I, a new trial is warranted if the previously unknown evidence would probably have produced an acquittal had the evidence been known by the jury. However, Wright cannot meet the second requirement of the Jones test. Wright cannot show that the DNA testing result is of such nature that it would probably produce an acquittal on retrial. Jones v. State, 709 So.2d 512, 521 (Fla. 1998) (Jones III) (citing Jones I, 591 So.2d at 915). Further, Wright cannot show that the DNA testing results weakens the case against him so as to give rise to a reasonable doubt as to his culpability. Id. at 526 (quoting Jones v. State, 678 So.2d 309, 315 (Fla.1996) (Jones II)). Even though the mtDNA testing on the hairs excluded both Wright and the victim, this result is consistent with the evidence presented to the jury, which was that none of the hairs could be matched to Wright. Therefore, the new DNA testing on the hairs does not meet the Jones standard because the jury knew at the trial that the hairs did not match Wright. The mtDNA hair testing would not change the outcome of the trial. See Preston v. State, 970 So.2d 789 (Fla. 2007) (quoting Jones I, 591 So.2d at 916); Tompkins v. State, 872 So.2d 230, 243 (Fla. 2003); King v. State, 808 So.2d 1237, 1247-49 (Fla.2002). Accordingly, Wright is not entitled to relief on this claim.
Wright further contends that the circuit court erred as a matter of law in denying his motion without an evidentiary hearing. When determining whether an evidentiary hearing is required on a successive rule 3.851 motion, the circuit court must look at the entire record. The motion may be denied without an evidentiary hearing if the motion, files, and records in the case conclusively show that the movant is entitled to no relief. See Fla. R.Crim. P. 3.851(f)(5)(B). Because the issues raised were determinable from the record, the trial court did not err in denying the motions without an evidentiary hearing.

CONCLUSION
For the reasons discussed above, we affirm the trial court's denial of postconviction relief.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, LEWIS, and BELL, JJ., concur.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).