BENTON, J.
Leonard Mazzara appeals the order denying, after an evidentiary hearing conducted on July 23, 2008, the motion for postconviction relief he filed on June 11, 2003, under Florida Rule of Criminal Procedure 3.850. Although we are unable to agree with all of the reasoning in the order, we affirm.
At Leonard Mazzara’s trial in September of 1982, the state put on evidence that Barry Hoffman and James White had murdered Frank Ihlenfeld and Linda Parrish in a Jacksonville Beach motel room on September 7, 1980, at Mr. Maz-zara’s behest.[1] Mr. Hoffman testified that he had not conspired with Mr. Mazzara and had not killed anyone (and explained his earlier guilty pleas as nothing more than part of an agreement to avoid the death penalty), but the jury found Mr. Mazzara guilty as charged on two counts of first-degree murder and one count of conspiracy to commit first-degree murder.
I.
By way of background, we pause to describe the chronology of certain events in *482 the Hoffman case: At his trial in January of 1983, the jury found Mr. Hoffman guilty of first-degree murder in the death of Mr. Ihlenfeld, second-degree murder in the death of Ms. Parrish, and of conspiracy (presumably with, among others, Mr. Maz-zara) to commit first-degree murder. (After Mr. Hoffman’s testimony at Mr. Maz-zara’s trial, the prosecution disavowed its plea agreement with Mr. Hoffman, who then had to stand trial himself, which resulted in his being sentenced to death.)
On October 2,1987, Mr. Hoffman filed a (timely) motion pursuant to Florida Rule of Criminal Procedure 3.850, alleging that the state had withheld the names of (other) persons who had confessed to the murders, thereby violating the requirements[2] of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under Brady, the state must “disclose material information within its possession or control that is favorable to the defense.” Green v. State, 975 So.2d 1090, 1101 (Fla.2008). The trial court summarily denied this motion, but the supreme court reversed and remanded, ruling in Hoffman v. State, 571 So.2d 449, 450 (Fla.1990), that a full evidentiary hearing was required.
The supreme court also ordered the state to honor Mr. Hoffman’s requests under chapter 119, Florida Statutes, for access to certain records the state attorney had. Id. On remand in 1991, Mr. Hoffman filed an amended motion pursuant to Florida Rule of Criminal Procedure 3.850, which was also summarily denied. On a second appeal, the supreme court again reversed summary denial, and remanded to the trial court for resolution of public records issues, directing the trial court to hold a hearing in compliance with the supreme court’s 1990 mandate. See Hoffman v. State, 613 So.2d 405, 406 (Fla.1992).
Several years of public records litigation ensued, after which Mr. Hoffman filed a second amended motion for postconviction relief in 1997, adding the claim that the prosecution had withheld the results of an exculpatory hair analysis known to it at the time of trial. The second amended motion alleged that the hair analysis excluded Mr. Hoffman, Mr. White, and Mr. Ihlenfeld as possible sources of a Caucasian male’s hair found clasped in Ms. Parrish’s corpse’s hands, and named the other persons who allegedly confessed to the murders, including Bubba Jackson. After an evidentiary hearing on the second amended motion, the trial court again denied Mr. Hoffman relief.
On appeal from this denial, however, the supreme court concluded that Brady violations had occurred in Mr. Hoffman’s case, and vacated his judgment and sentence, ruling that there was “a reasonable probability that the result of the trial would have been different had the jury heard that another suspect had confessed and the hair in the victim’s hand did not belong to Hoffman.” Hoffman v. State, 800 So.2d 174, 181 (Fla.2001).
*483 II.
Within two years of the supreme court’s third Hoffman opinion, Mr. Mazzara filed (on June 11, 2003) the motion for postcon-viction relief under Florida Rule of Criminal Procedure 8.850 which the trial court denied below, giving rise to the present appeal. By the time Mr. Mazzara filed the Rule 3.850 motion that began the present proceedings below, more than two years had elapsed from the date the mandate in his unsuccessful direct appeal from conviction and sentence had issued. But Mr. Mazzara’s motion alleged that events in the course of litigation involving Mr. Hoffman gave rise to newly discovered evidence; and that this newly discovered evidence made his collateral challenge to his conviction and sentence timely[3] — by what would otherwise have concededly been the filing of his Rule 3.850 motion out of time. See Bolender v. State, 658 So.2d 82, 85 (Fla.1995) (requiring that a motion filed outside the two years provided for in Rule 3.850(b) on the basis of newly discovered evidence under Rule 3.850(b)(1) must be filed “within two years of the time when evidence upon which avoidance of the time limit was based could have been discovered through the exercise of due diligence”).
At a hearing on the motion (on July 23, 2008), Mr. Mazzara put on evidence[4] of a Brady claim not unlike what had carried the day in Hoffman. But Mr. Hoffman[5] and Mr. White testified as state’s witnesses at the evidentiary hearing. Both testified that they had committed the murders, when alone with the victims in the motel room. Mr. Hoffman testified that he went to Mr. Mazzara’s house after-wards, where Mr. Mazzara paid him for what they had done. Mr. White testified consistently that, after helping commit the murders, he accompanied Mr. Hoffman to an apartment, where Mr. Hoffman went inside, then emerged with $500, which Mr. Hoffman gave him; and that Mr. Marshall told him the money came from Mr. Maz-zara.
III.
In denying relief, the trial court ruled that Mr. Mazzara failed to establish that the state had suppressed, even inadvertently, evidence either of the hair analysis or of Bubba Jackson’s (or others’) confession(s). The trial court also ruled that Mr. Mazzara failed to establish that either the hair analysis report or Mr. Jackson’s confession would have been favorable to the defense. In Hoffman, however, the supreme court had plainly viewed these issues differently, explaining its reasoning, as follows:
*484 [w]hether Hoffman was in fact in that motel room was an important issue that the jury had to resolve. Therefore, any evidence tending to either prove or disprove this fact would be highly probative. Hair evidence found in the victim’s clutched hand could tend to prove recent contact between the victim and a person present in that room at the time of her death. With the evidence excluding Hoffman as the source of the clutched hair, defense counsel could have strenuously argued that the victim was clutching the hair of her assailant, but that assailant was not Hoffman.
[[Image here]]
... [Ujnder the circumstances of this case, where another person has also confessed to the crime, the State should have disclosed that information to the defense. There is a reasonable probability that the result of the trial would have been different had the jury heard that another suspect had confessed and the hair in the victim’s hand did not belong to Hoffman.
Hoffman, 800 So.2d at 180-81. Because the logic of the supreme court’s analysis in Hoffman, 800 So.2d at 180-81, applies equally to Mr. Mazzara, who after all was charged with hiring Mr. Hoffman to commit the same murders, the trial court’s rulings on identical questions in the present case were erroneous. See State v. Lott, 286 So.2d 565, 566 (Fla.1973) (“The trial court is bound by the decisions of this Court just as the District Courts of Appeal follow controlling precedents set by the Florida Supreme Court.”); Hill v. State, 711 So.2d 1221, 1224 (Fla. 1st DCA 1998) (noting that to “avoid what would have otherwise been its obligation to follow” established supreme court precedent, the lower court had to distinguish the case before it).
The order under review identifies no meaningful distinction, between Hoffman and the present case as regards the relevance and logical implications of the newly discovered evidence. In Hoffman, moreover, the supreme court ruled that the state had suppressed the very same evidence. See State v. Falcon, 556 So.2d 762, 764 (Fla. 2d DCA 1990) (“[A] trial court must follow precedent established by our state supreme court ‘even though it might believe the law should be otherwise.’”) (quoting State v. Dwyer, 332 So.2d 333, 335 (Fla.1976)). Without more, evidence tending to prove Mr. Hoffman was not the assailant “ ‘could reasonably be taken to put the whole case in such a different light as to undermine confidence in’ ” not only that verdict but in the verdict in Mr. Mazzara’s case, as well. Carroll v. State, 815 So.2d 601, 619 (Fla.2002) (quoting Strickler, 527 U.S. at 290, 119 S.Ct. 1936).
IV.
But the cases differ in another, important way: The postconviction court in the present ease had before it not only the record of the original 1982 jury trial,[6] but also the evidence the state presented at the 2008 evidentiary hearing. The lower court found that “[a]t the evidentiary hearing, Mr. Hoffman admitted to killing Mr. Ihlenfeld. Mr. Hoffman also testified that after the killing, he went to the Defendant’s house to get paid $2500-3000 because that was where he was told to go. Mr. White also testified that after the killing, he drove with Mr. Hoffman to the *485 Defendant’s house and that Hoffman gave him $500.”
“[0]n a motion for postconviction relief alleging newly discovered evidence, the circuit court considers all admissible evidence when evaluating whether a new trial is warranted. This includes new evidence of guilt.” Wright v. State, 995 So.2d 324, 327-28 (Fla.2008) (citation omitted). See also Johnston v. State, 27 So.3d 11, 19 (Fla.2010) (“[I]n deciding if a new trial is warranted, the trial court must consider all admissible evidence, which in this case includes the new DNA evidence matching Johnston’s profile.”).
Here the hair analysis evidence and the Jackson confession, the newly discovered evidence favorable to Mr. Mazzara, must be considered, not in isolation, but together with all relevant evidence available on a new trial, including the confessions Messrs. Hoffman and White made at the evidentiary hearing. To vacate a judgment on collateral attack, on grounds of newly discovered evidence, the newly discovered evidence, which must be taken together with all other available evidence, “must be of such nature that it would probably produce an acquittal on retrial.” Jones v. State, 709 So.2d 512, 521 (Fla.1998). Appellant has failed to demonstrate that the trial court erred when it concluded that admission of the hair analysis report and Mr. Jackson’s confession at a second trial, viewed in the light of other newly discovered evidence favorable to the state, would probably not produce an acquittal on retrial.
Affirmed.
DAVIS, J., concurs.
MARSTILLER, J., concurs in result only.

. At trial, the state called George Marshall, who testified that Mr. Mazzara requested his assistance in finding someone to kill Mr. Ihl-enfeld and that he recruited Mr. Hoffman and Mr. White for the job. Mr. Marshall was granted immunity from prosecution on any charge involving the crimes in exchange for testifying at Mr. Mazzara’s trial. The state also adduced testimony of law enforcement officers regarding confessions by Mr. Hoffman.

. To establish a Brady violation, a defendant must demonstrate "(1) that favorable evidence — either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced.” Green v. State, 975 So.2d 1090, 1101-02 (Fla.2008) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)); Polk v. State, 906 So.2d 1212, 1215 (Fla. 1st DCA 2005). "[Pjrejudice is measured by determining 'whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.’ " Carroll v. State, 815 So.2d 601, 619 (Fla.2002) (quoting Strickler, 527 U.S. at 281-82, 119 S.Ct. 1936). Applying these elements, the evidence must be considered in the context of the entire record. Id.

.The motion alleged that Mr. Mazzara had learned of the exculpatory evidence Mr. Hoffman's lengthy Chapter 119 litigation had brought to light only when he read the supreme court’s opinion in the third Hoffman decision. Mr. Mazzara asserted in his motion that he had submitted a request for records under Chapter 119 "many years ago,” but that the request was denied, and that only through the supreme court’s opinion in Mr. Hoffman's case was he able to ascertain that the state had withheld exculpatory evidence. Mr. Mazzara’s trial counsel was deceased at the time of the evidentiary hearing. Mr. Maz-zara testified that he had not known about the hair analysis evidence or the fact that Mr. Jackson had confessed to the murders until the supreme court issued its opinion in Hoffman v. State, 800 So.2d 174 (Fla.2001). The state put on no evidence contradicting this testimony.

. Although the hair analysis report and evidence of the purported confession were not introduced into evidence at the hearing, the trial court took judicial notice of both Mr. Mazzara's entire case file and "Mr. Hoffman’s entire case.”

. Mr. Hoffman had pleaded guilty to two counts of second-degree murder on February 8, 2006, and been resentenced to life in prison.

. The coconspirators’ testimony was not available to the prosecution at the time of the original trial. At the original trial, law enforcement personnel testified that Mr. Hoffman (but not Mr. White) had confessed. Mr. Hoffman testified at the original trial that he was not involved with the murders.