PRISCILLA R. OWEN, Circuit Judge,
dissenting:
I respectfully dissent. The prosecutor’s constitutional error in tainting the in-court identifications made by the two bank tellers was harmless beyond a reasonable doubt.[1] The fingerprint evidence establishes Shaffer’s guilt.[2] The majority opinion *704 improperly discounts that evidence as well as the probative strength of the minutes-long videotape of the robber committing the robbery. The video is much clearer than the majority opinion implies, and the jury had the opportunity to look at the video and then Shaffer and Robinson in person at trial to determine which of them was caught in the act. The evidence overwhelmingly establishes Shaffer’s guilt. I would therefore affirm the conviction, in spite of the Government’s extremely improper and unprofessional conduct.
Shaffer’s theory at trial was that Robinson, not Shaffer, robbed the bank.[3] But it was Shaffer’s fingerprints, not Robinson’s, that were on the deposit slip on which the robber penned a demand note before handing it to the bank teller. Importantly, there is no possibility that Shaffer could have touched the deposit slip before the robbery or outside of the bank because the teller gave the deposit slip to the robber.[4] The surveillance video tape reflects that the deposit slip was handed to the robber by a bank teller after the robber entered the bank and approached the counter. The robber then writes on the slip (pressing down with his fingertips to hold the paper in place for more than one minute). After demanding and receiving money, the robber departed the area leaving the deposit slip/demand note behind. This is all memorialized on the video tape, very clearly. Because it is indisputable that the piece of paper was handed to the robber immediately before the robbery and then was left at the scene, there is no reasonable explanation as to how Shaffer’s fingerprint appeared on the slip other than to conclude that he was the robber.[5]
As the majority opinion recounts, detectives were able to recover a latent fingertip print from the bank deposit slip used as the demand note.[6] Marcy Farley, a latent fingerprint examiner from the Brazoria County Sheriffs Department, analyzed the print found on the deposit slip and confirmed that it matched Shaffer’s. Farley also personally took Shaffer’s fingertip prints and identified Shaffer at trial as the man she fingerprinted. The print’s match was confirmed by two other fingerprint experts in the Brazoria County Sheriffs Department, one of whom testified at trial. None of this evidence was impeached in any material way. There is no contention, or even suggestion, that the print belonged to Robinson. This is unrefuted physical evidence that identifies Shaffer as the robber beyond any reasonable doubt.
The video is also compelling evidence. The majority opinion overstates the case in describing its quality as “grainy.”[7] The video was taken from inside the bank directly in front of the teller counter occupied by A.L. at the time of the robbery. The video shows that a man walks up to the counter, receives a deposit slip that is handed to him, and begins to write on it. After securing the slip with his fingertips and writing on the slip for over ninety seconds, the man displays a gun, then *705 waits another thirty seconds until the teller hands him money. All told, the man is in the video’s frame, seen from the waist up, for more than three minutes. He appears to be standing no more than an arm’s length away from the camera for almost the entire duration.
The majority concludes that the video has little probative value for purposes of our harmless error analysis based on the opinion’s assessment that the video was of “grainy quality” and that shadows from the robber’s hat “obscuref ] his facial features.” [8] The video in fact provides a reasonably clear image of the robber’s face at times. Shadows cast from the perpetrator’s hat do obscure his features at some points during the video, but his unmasked face can be seen with clarity during other portions as he shifts his body positioning and turns his head. There were still shots of the robber’s face taken from the video.
The jury was shown this video during trial. The jury also had multiple opportunities to view Robinson and to compare him to the man in the video: Robinson testified at trial for the Government and also appeared in the court room during the testimony of both A.L. and C.M., another teller present during the robbery, during which both witnesses were asked whether Robinson was the man that robbed the bank. Both testified that he was not. Although these negative identifications are likely tainted by the same suggestive pretrial procedures that tainted the positive identifications of Shaffer, Robinson’s appearance in the court room during each of these witnesses’ testimony offered the jury extended opportunities to look at Robinson and compare him to the robber shown in the video. One of Robinson’s appearances in the courtroom occurred only four minutes after the jury viewed the video. The jury also requested an opportunity to view the video from “up close” during their deliberations, giving the members of the jury another opportunity to compare the robber’s identity to both Shaffer and Robinson. This second viewing appears to have featured prominently in the jury’s deliberations—it returned a guilty verdict only 20 minutes after viewing the video.
More confounding is the majority opinion’s conclusion that the fingerprint evidence does not overwhelmingly establish Shaffer’s guilt. With essentially no analysis, it holds that the fingerprint recovered from the demand note written by the robber “does not persuade” as to the harmlessness of the district court’s error.[9] The majority opinion fails to explain how Shaffer’s fingerprint on the demand note could allow any reasonable doubt that Shaffer was responsible for the robbery.
Finally, although Shaffer is correct that the Government emphasized the identifications made by A.L. and C.M. several times during its opening and closing statements, it is important to note that Shaffer’s counsel forcefully cross-examined those witnesses about their previous failures to identify Shaffer and elicited testimony about the suggestiveness of the procedures that led to their identifications. Defense counsel also elicited testimony from Detective Jernigan, one of the Government’s primary witnesses, that eyewitness identifications are not always reliable. Armed with this testimony, Defense counsel argued to the jurors during his closing argument that they should doubt the positive identifications. In any event, the fingerprint evidence coupled with the surveillance video overwhelmingly establishes Shaffer’s guilt.
*706 The majority opinion reasons that because “ ‘in-court identifications can be powerfully persuasive’ ”[10] and the Government relied on the identifications in its closing argument,[11] there is a reasonable possibility that the tainted identifications “might have contributed to the conviction.”[12] The majority opinion’s application of the harmless error rule formulated in Chapman v. California[13] is in tension with decisions of the Supreme Court and of our en banc court.
In Harrington v. California,[14] in which the Supreme Court directly reviewed a state court conviction, four defendants were tried together and the confessions of two of them, who did not testify at trial, were admitted into evidence with the limiting instruction that the jury was to consider each confession only against the confessor.[15] Citing Bruton v. United States,[16] the Supreme Court held that this violated Harrington’s rights under the Confrontation Clause of the Sixth Amendment because Harrington did not have the opportunity to cross-examine these two non-testifying defendants. The Supreme Court held that the error was harmless, however, explaining that “[i]t is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of [the two co-defendants’] confessions and who otherwise would have remained in doubt and unconvinced.”[17] The Court rejected this argument, stating “[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury.”[18] The Court concluded, “[t]he case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of Bruton can constitute harmless error, we must leave this state conviction undisturbed.”[19]
The same can be said of the evidence against Shaffer in the present case. The fingerprint and videotape evidence was not circumstantial. It was substantial physical evidence and convincing beyond a reasonable doubt.
The majority opinion is inconsistent with Harryman v. Estelle, in which our court, sitting en banc, applied the harmless error rule in a habeas proceeding.[20] Harryman was arrested, and in searching his person, one of the officers found a condom containing a white powdered substance.[21] Before *707 reciting the Miranda[22] warning, the office asked Harryman “[w]hat is this” and Har-ryman responded “[o]h, you know what it is. It is heroin.”[23] At trial, the arresting officers testified about this statement,[24] and one of the prosecutors referred to it three times in closing argument to the jury.[25] Harryman was convicted in state court of possession of heroin and sentenced to life in prison. In habeas proceedings, after concluding that Miranda had been violated and that there was constitutional error,[26] our court addressed the harmless error standard. We said, “ ‘it is necessary to review the facts of the ease and the evidence adduced at trial’ to determine the effect of the unlawfully admitted evidence ‘upon the other evidence adduced at trial and upon the conduct of the defense.’”[27]' “A court must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt.”[28] Harryman maintained that the condom in his possession contained only milk sugar, that the police failed to maintain, a chain of custody of the condom and confused it with another condom also in police custody that contained heroin.[29] It was undisputed that the police had custody of two condoms, one containing milk sugar and the other containing heroin.[30] However, our court concluded that the testimony regarding the chain of custody established that the condom containing heroin was the one found on Harrington’s person at the time he was arrested and therefore, that the Miranda violation was harmless beyond a reasonable doubt.[31]
In the present case, the evidence that the robber was Shaffer and not Robinson was physical evidence—a fingerprint and a lengthy video showing the robber’s face. The in-court identifications were harmless beyond a reasonable doubt.
[[Image here]]
I would affirm Shaffer’s conviction. I therefore respectfully dissent.

. See, e.g., Harrington v. California, 395 U.S. 250, 253-54, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Harryman v. Estelle, 616 F.2d 870, 875-88 (5th Cir. 1980) (en banc).

. See United States v. Watkins, 741 F.2d 692, 695 (5th Cir. 1984).

. ’ Ante at 703.

. Cf. Wright v. Florida, 474 U.S. 1094, 1096, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986) (Black-mun, J., dissenting from denial of certiorari) (explaining that because "Wright’s fingerprint could have been left during [an] alleged earlier break-in, this case comes down to Wright’s word against Westberry’s”).

. See United States v. Folks, 236 F.3d 384, 390 (7th Cir. 2001) (holding error harmless with fingerprints as primary evidence against defendant); United States v. Wade, 740 F.2d 625, 628 (8th Cir. 1984) (same).

. Ante at 703.

. Ante at 703.

. Ante at 703.

. Ante at 703.

. Ante at 702 (quoting United States v. Rogers, 126 F.3d 655, 660 (5th Cir. 1997)).

. Ante at 702.

. Ante at 703 (quoting United States v. Alvarado-Valdez, 521 F.3d 337, 341 (5th Cir. 2008)).

. 386 U.S. 18, 19, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding, in a case in which under state law, the prosecutor was permitted to comment and did comment on the defendants’ failure to testify or to deny or explain incriminating evidence, “that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt”).

. 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

. Id. at 252, 89 S.Ct. 1726.

. 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

. Harrington, 395 U.S. at 254, 89 S.Ct. 1726.

. Id.

. Id.

. 616 F.2d 870, 875-78 (5th Cir. 1980) (en banc).

. Id. at 873.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Harryman, 616 F.2d at 873.

. Id.

. Id. at 877.

. Id. at 875.

. Id. at 876 (quoting Fahy v. Connecticut, 375 U.S. 85, 87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)).

. Id.

. Id. at 877-78.

. Id.

. Id. at 878.